Fitzgerald vs. The State of Wisconsin.

THOMAS FITZGERALD, Plaintiff in Error,

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

| 4 | 395 |
| --- | --- |
| 74 | 451 |

| 4 | 395 |
| --- | --- |
| 52 LRA | 84 |

ERROR TO THE CIRCUIT COURT OF LA FAYETTE COUNTY.

Where the caption of an indictment represents that it was found by "the grand jurors of the state of Wisconsin, to ꞌwit, twelve good and lawful men," the indictment is bad and a conviction thereon will be set aside.

The statute requires that twelve of the number of at least *sixteen* grand jurors must agree in finding a good indictment.

The caption to an indictment should set forth with sufficient certainty, the court in which, the jury by whom, and also the time and the place at which the indictment was found, and if instead of these requisites it shows that the indictment was found by a jury not legally constituted, it will not support a verdict and conviction.

Where the statutes provide in addition to the punishment of imprisonment in the state prison at hard labor, solitary confinement, if the latter be omitted, the sentence is erroneous, and will be reversed.

THE facts in the case necessary to be stated, appear in the opinion of the court.

*James H. Knowlton*, attorney for plaintiff in error.

*George B. Smith*, Attorney-General, for the state.

*By the Court,* COLE, J. This cause is brought to this court by a writ of error to the La Fayette Circuit Court. The plaintiff in error was indicted for manslaughter at the April term of that court, 1855. The indictment contained two counts, charging the plaintiff in error with having killed on the first of April, 1855, at the village of Schullsburg in La Fayette county, Michael Ormond.

We deem it unnecessary to pass upon all the questions raised by the counsel in the argument of this cause. We shall, therefore, notice but two of the points made by the counsel for the plaintiff in error, either of which is fatal to the case. The first relates to the sufficiency of the indictment, the other to the sentence of the court. The following is so much of the indictment

as it is necessary to set forth in order to understand the objection taken to it.

"*State of Wisconsin, county of La Fayette*, ss. :—In the Circuit Court for the county of La Fayette, in the state of Wisconsin, at the term thereof, began and held at the court-house in the town of Shullsburg, in said county, on the third Monday in the month of April, A. D. 1855.

"The grand jurors of the state of Wisconsin, to wit, *twelve* good and lawful men, being duly elected, drawn, chosen, impanneled, tried, charged and sworn, to inquire, &c."

It will be at once observed, that the caption of the indictment represents that it was found by the grand jurors of the state of Wisconsin, to wit, twelve good and lawful men. Under the laws of this state a grand jury constituted of a less number than sixteen is insufficient to find a good bill. *Section* 12, *chap.* 97, *R. S.* provides as follows, " There shall not be more than twenty-three, nor less than sixteen persons sworn on any grand jury," &c. The grand jury shall consist of sixteen persons at least, and may contain a greater number, not exceeding twenty-three, according to this statutory enactment. It was perfectly competent for the legislature to prescribe by law the organization of grand juries, and having done so the statutory number is essential to constitute a good jury. There shall be sixteen, and twelve of this number must agree in finding a bill. Such appears to be the plain meaning and intent of the law. Is the case altered by being laid under a *videlicet?* We cannot see that it is. Without doubt the part laid under the *videlicet* might have been omitted, and the indictment still have been good. Then the legal presumption would have been, that the jury was rightly constituted. But here the case is different, the number being stated under a *videlicet*. The office of a *videlicet* is well understood. It is used in pleading to save the party the necessity of proving the precise sum or day laid under it. 1 *Chitt. P.* 218. It is not easy to discover its office here, unless it be to fix and define the true number of the body that found the indictment. The grand jury of the state, twelve good and lawful men. Are we at liberty to presume that the jury was rightly constituted in the teeth of such an averment? That it was composed of sixteen, twenty-three, or any other number than twelve? Suppose the caption

had shown that the indictment was found by a court having no jurisdiction of the offence indicted, are we to presume the court had jurisdiction? This would be contrary to all authority. Or again, had shown affirmatively that the persons sworn and charged upon the grand jury, did not possess the requisite qualifications to serve as jurors, are we to presume they were good jurors? But it is said that the caption is no part of the indictment itself, and that we can reject what is laid under the *videlicet* as surplusage. It is true that writers upon criminal law speak of the caption as being a kind of preamble to the indictment upon record. *Arch. C. P.* 27 ; 1 *Chit. do.* 327. The latter author says that "it is a formal statement of the proceedings, describing the court before which the indictment was found, and the jurors by whom it was found, and these particulars it must set forth with sufficient certainty. The record of the prosecution will not be perfect without the caption and would not be admissible in evidence." Some difference of sentiment exists as to the strictness requisite in drawing the caption. Lord Hale went so far as to say, that it was necessary to insert the names of at least twelve grand jurors in the caption of the indictment (2 *Hale,* 167), and the rule was not settled otherwise until the case of *R. vs. Aylett* (6 *Ad. & Ell.* 249). In *Croke Eliz.* 654, an indictment was declared bad, when the caption did not show that it was found upon the oath of twelve men, though by the common law, a grand jury might consist of any number between twelve and twenty-three. *Bac. Ab. Indictment, C; Jurors, A ;* 2 *Hawk, chap.* 25, *sec.* 118, *et seq.,* gives numerous instances in which indictments have been held bad on account of defective statements in the caption. In the case of *The People vs. Guernsey* (3 *J. Cases,* 265), where an indictment was found at the general sessions of the peace, the caption of which stated that the grand jury were sworn and charged, but omitted the words "then and there," and the same was held bad on motion in arrest of judgment. It is proper, however, to state that the record in that case was certified from a court of inferior jurisdiction. Perhaps less strictness is required in a court of general jurisdiction ; yet even there, should the indictment show upon its face that it was found by a grand jury not legally constituted, or that twelve jurors did not concur in finding it, or that the jurors did not possess the legal qualifications to enable them

to serve as jurors, we think it would be declared bad. The caption should set forth with sufficient certainty the court in which, the jury by whom, and also the time and place at which the indictment was found ; and if instead of these requisites, it shows as in this case, that the indictment was found by a jury not legally and properly constituted, it will not support a verdict and conviction.

Again ; it is objected " that the sentence of the prisoner in this case is illegal and improper, and such as the court had no authority to pronounce." This point involves a construction of *Sec. 5, Chap. 150, R. S.* and is well taken. The plaintiff in error was indicted and convicted of manslaughter in the second degree. *Sec. 22, Chap.* 133, provides the punishment for that offence, to be imprisonment in the state prison not more than seven, nor less than four years. This provision of the statute was undoubtedly in the mind of the judge when he sentenced the prisoner in this case. The sentence was, that Thomas Fitzgerald, the defendant, be punished by confinement at hard labor in the state prison for the period of four years, from 12 o'clock noon of the day of the sentence. *Chap.* 150, *Sec.* 5, however, provides that, " In every case in which the punishment of imprisonment in the state prison is awarded against any convict, the form of the sentence shall be, that he be punished by confinement at hard labor; and he shall *also* be sentenced to solitary imprisonment for such term as the court shall direct, not exceeding twenty days at any one time, and in the execution of such punishment the solitary imprisonment shall precede the punishment by hard labor, unless the court shall otherwise direct."

In this case the prisoner was not sentenced to solitary imprisonment for any time whatever, although by the above provision such solitary imprisonment is an essential ingredient in the sentence awarded. The solitary imprisonment is as much a part of the sentence as the hard labor in the state prison, and both constitute the judgment. It is true that the sentence was more favorable to the prisoner, than the judgment prescribed by the statute, but still he can take advantage of it. *King vs. Baum,* 7 *Ad. and Ell.* 58 ; *Whitfield vs. Queen, id. N. S.* 582. It is not the judgment the statute prescribes, and therefore is erroneous.

In Massachusetts they have the same statute, and in the case of *Stevens vs. Commonwealth* (4 *Met.* 360), it was held that a sentence to imprisonment in the state prison, must be partly to solitary imprisonment and partly to confinement to hard labor, and a sentence which directs no solitary imprisonment, was erroneous and might be reversed on error at the suit of the convict.

For these reasons the judgment of the Circuit Court must be reversed.