### PORTIS *v.* THE STATE, 23 Miss. Rep., 578.

#### GAMING.

It is essential to the validity of the indictment, that the grand jury by whom it is preferred, should not only possess the requisite qualifications, but that they should also be drawn and empanelled according to law.

The circuit court has the power to cause a bystander to be sworn in the place of a grand juror who is sick or absent. But where the court discharged a grand juror on account of the sickness of his family, and appointed another in his stead, such substituted person is an illegal grand juror and vitiates the whole.

Error to Tippah circuit court. MILLER, J.

The facts of the case as shown by the record are, that Addison Portis, at the March term, 1850, of the circuit court of Tippah county, was indicted by the grand jury of said county for playing a game of cards for money. At the September term of the said circuit court, 1850, the defendant (Portis) appeared and pleaded four pleas to said bill of indictment, in abatement. 1st. That after the jury at the March term, 1850, of said circuit court had been called, and one of the grand jurors of the thirteen drawn, and the balance of the *venire* had been apportioned as petit jurors, it being the second day of the term,

Waldrop, one of the grand jurors, applied to the court to be discharged from further service, on account of the sickness of his wife; and he was thereupon discharged, and C. A. Green was sworn as a grand juror in his stead, which juror was taken from the by-standers, and was not one of the *venire facias.* The three first pleas of the defendant involve the question of the authority of the court to discharge a grand juror on account of the sickness of his wife, and when a juror is discharged, that the vacancy must be filled out of the balance of the *venire* then serving as jurors.

The fourth plea involves the question of the legal organization of the whole grand jury, and denies that the assessor of taxes had returned a list of the householders of the county, as it was his duty to do under the statute, out of whom a grand jury must be drawn; and that there was in fact no legal grand jury to find the indictment against defendant, and prays it might be quashed. These pleas were all demurred to by the state, and the demurrers sustained, and upon a plea of not guilty the defendant was convicted, when a writ of error from the judgment of the court below, sustaining said demurrer, was prayed to this court.

*Price & Jackson* for plaintiff in error, filed an elaborate brief, and relied chiefly on the following authorities, to show that the decision of the court below sustaining the demurrer to the pleas was erroneous. Rawls v. State, 8 S. & M., 599; McQuillen v. State, 8 ib., 587; Barney v. State, 12 ib., 68; 1 Morris, R., 192.

*D. C. Glenn,* attorney general.

Contended, the opinion of the court below was correct, and cited the following authorities. Hutch. Code, 886; ib., 879; ib., 887; 2 Wheelen's Cr. Cases, 473–476; 2 Gall. R., 364; King v. State, 5 How., 732; Dowling v. State, 5 S. & M., 664; Planter's Bank v. Sharp., 4 ib., 85; 13 ib., 287, 288.

*J. W. Thompson,* on same side.

Smith, C. J.:

This was an indictment for a violation against the statute against gaming, tried in the circuit court of Tippah. The defense relied on was presented through several pleas of abatement

to the indictment. These pleas were judged insufficient by the court, and the defendant was convicted on the issue of not guilty.

The exceptions taken to the proceedings in the circuit court are, that the court erred in sustaining the demurrer to the defendant's last plea; that the court erred in discharging a member of the grand jury by whom the indictment was preferred, after he had been chosen, empanelled, and sworn as such, for the reason assigned in the record; and that the court erred in ordering the sheriff to summon a substitute from amongst the by-standers to supply the vacancy occasioned by the discharge of the original.

1. The last plea alleges in substance, that the names of the individuals composing the *venire*, from which the grand jury was chosen by lot, were not drawn by the clerk and sheriff from lot number one, which by the statute of 1830, the clerk of the circuit court was bound to keep, and in which the names of all freeholders and householders of the county, liable to serve on juries, should be deposited.

The demurrer admitted the truth of the facts averred in the plea, which, if well pleaded, doubtless constituted a valid defense to the action of the indictment; as it is essential to the validity of the indictment that the members of the grand jury by whom it was preferred, should not only possess the requisite qualifications, but that they should also be drawn and empanelled in accordance with the directions of the statute.[1]   McQuillen v. State, 8 S. & M., 587; Barney v. State, 12 ib., 68.

We think the plea was technically correct. Hence the court erred in sustaining the demurrer.

2. On the second day of the term, after the grand jury had been organized and charged, one of their number who had been regularly drawn, empanelled, and sworn as such, upon his own application was discharged, and a substitute ordered to be summoned by the court from the by-standers. The reason assigned by the juror for the application was the indisposition of his wife.

This action of the court is the subject matter of the next ex-

[1] Wharton Am. Cr. Law, 472; State v. Duncan, 7 Yerg., 527; State v. Bryant, 10 Yerg., 271; State v. Brooks, 9 Ala., 10; Rawle v. State, 8 S. & M., 599; State v. Symonds, 36 Me., 128; Vanhook v. State, 12 Tex., 469; Jackson v. State, 11 Tex., 261; but see State v. Mahan, 12 Tex., 283; Wharton Prec. 1158.

ception.   The question involved is one of great impression in this court and of some practical importance.   Counsel have not furnished us with references to adjudicated cases upon this point, if, indeed, they are to be found.

If the circuit courts possess the authority to discharge a grand juror for the cause appearing in the record, they necessarily possess an unlimited discretion over the subject ; for the reason given for exercising the discretion in this particular case involved neither the legal incapacity nor the mental or physical inability of the juror.   It does not even appear that the illness of his wife was of such character as to require his presence at home.

The authority exercised in this instance is claimed for the circuit courts as a power necessarily incident to them as courts of oyer and terminer.   The learned counsel for the state have, however, not produced any direct authority in support of this position, and we are unable to deduce an argument in favor of the doctrine from the power exercised by these courts in reference to petit jurors.

The courts of oyer and terminer in England and the circuit court of this state, by virtue of their character as such, doubtless possess the power to adjourn or dismiss the grand jury whenever they deem it proper to do so.   But it is apprehended that the power to suspend the functions of a grand jury by discharging them, is clearly to be distinguished from the authority to discharge a part or the whole of its members, and the consequent right to cause others to be sworn in their stead.   The capriciousness or vicious exercise of the power in the one case would doubtless constitute a public wrong, but it could not impair the integrity of grand juries ; but in the other, the power in its full extent, as claimed for the courts, might be, and probably would be used as radically to affect their organization and thereby seriously to impair the sanctity and purity of this invaluable institution.

In our examination of this subject we have not been able to discover a single case in which this power was claimed or exercised by the courts in England or this country as resulting from their common law authority.   The books are silent

on the subject, and we presume, for the reason that the power did not exist. We dissent from the proposition.

The statute laws of this state have not, certainly, in direct terms vested the circuit courts with an unlimited jurisdiction on this subject. They have not, in fact, expressly clothed them with the power to discharge a grand juror for any cause whatever, unless the provision which empowers them to cause a grand juror to be sworn in the place of one who is sick or absent, be held to convey such authority in these specified cases.

The cases in which the courts have power to cause substituted jurors to be sworn, are designated in the statute. The cases are, where the grand juror, after he has been empanelled and sworn, has died, is sick, or absent. The specification of the occasions on which this power may be exercised by the courts, upon a plain principle, would seem to exclude the authority of the courts to supply vacancies occurring in grand juries from any other cause. We have seen that the circuit courts, by virtue of their common law power as courts of oyer and terminer, do not possess a discretionary right to discharge grand jurors after they have been empanelled and sworn. If, then, the conclusion be just, that the authority of the courts " to cause other grand jurors to be sworn," is limited by the statute to the cases specified, it follows that the legislature could not have intended to vest in them an unrestricted discretion over the subject. For it would be absurd to suppose that the legislature designed that a circuit judge should possess the power to discharge, at his discretion, any number of the members of a grand jury which have been regularly empanelled and sworn, and yet deny to him the authority to cause the vacancy thereby occasioned to be supplied.

It is manifest, if the court were correct in the case under consideration, that the general power is unrestricted. If it were lawful for the judge to discharge one member of the grand jury without cause, he might, with equal propriety, so far as the mere question of power is concerned, discharge any number on his own mere motion and with as little cause. The practical results of this doctrine are too manifest to require elaboration, and too

much opposed to the spirit of the laws regulating the organization of juries to be sanctioned by this court.

But it does not follow, that by this unauthorized act of the court the grand jury were rendered invalid. If the action of the court had ceased here, no such result would have followed. For, after the discharge of the juror in question, a sufficient number to constitute a legal grand jury remained; the body would have preserved its organization, and possessing all the requisites of a legally constituted grand jury, its acts to all intents would have been valid.

But the court, as we have seen, having acted without authority, manifestly could not, by such illegal and void act, acquire a right to cause the substitute to be sworn in the place of the discharged grand juror. The admission, therefore, of this person upon the panel of the grand jury and his participation in their deliberations vitiated the whole body. It could not then be said that it was a grand jury drawn and empanelled in accordance with the directions of the law. Hence, upon the well-settled doctrine of this court, all of its acts were void.

There remains another objection. It is, that the court improperly ordered the grand juror who was sworn as a substitute, to be summoned by the sheriff from amongst the by-standers.

It is argued that this juror should have been selected by lot from the remainder of the original *venire* then in attendance upon the court.

We do not concur in the validity of this exception. The statute is indefinite on the subject. It has not prescribed the mode in which jurors in such cases shall be selected. The method adopted by the court in this case is the one which we believe has been uniformly pursued, and has been, at least indirectly, sanctioned by this court.

Let the judgment be reversed, and the indictment quashed.