### LEATHERS *v.* THE STATE, 26 Miss. Rep., 73.

#### ASSAULT WITH INTENT TO KILL.

The statute in relation to grand juries was manifestly intended to apply to the circuit courts of all the counties then in existence, or that might be afterwards created by statute.

A grand jury composed of members who have not been drawn, summoned, or empanelled according to law, is illegal, and all their acts are void. Therefore where the clerk and sheriff draw a *venire* composed of forty persons, instead of the number required by law, an indictment preferred by a grand jury selected from such *venire*, is invalid.

Error to Pontotoc circuit court. MILLER, J.

The defendant was indicted in the circuit court of Pontotoc county for an assault with intent to commit murder, and he filed several pleas in abatement to the bill of indictment, and among them he pleaded, in substance, that thirty-six persons were not drawn and summoned, as directed by law, to serve as jurors for the first week of the term of the circuit court of Pontotoc county, from which, by law, the grand jury for said term were to be selected; but that forty persons were drawn and summoned,

from whom the grand jury who preferred the bill of indictment were drawn or selected at said term of the court.

This plea was demurred to and the demurrer sustained. The defendant was convicted, and he prayed a writ of error to this court.

*Price & Jackson* for plaintiff in error.

The circuit court act of 1833, § 8, Hutch. Code, 888, directs the number of jurors to be drawn for the first week of the terms of the circuit courts; and further directs that out of these jurors, thirty-six in number, the grand jury shall be drawn. This act was passed some three years before the counties of the Chickasaw cession were organized; but we take it for granted it is equally applicable to them, by construction of law, as it is to the older counties. If it is not, then there is not and has never been any legal method of constituting juries in these counties. This statute prescribes distinctly the number of jurors to be drawn for the first week, thirty-six, and with equal distinctness enacts that out of these thirty-six the grand jurors shall be drawn. The second and third pleas in this case aver, that the demurrer to them admits, that forty instead of thirty-six jurors were drawn for the first week of the term at which this indictment was found; and that out of these forty, the grand jury who found this bill were drawn.

Surely, so palpable a departure and violation of the plain directions of the statute vitiates the grand jury in its organization, and annuls all its action. There is no mystery in the enactment; it is easy to understand, and easy to comply with. No discretion is vested anywhere to increase or reduce the number of jurors to be drawn and summoned. That number is definitely fixed by the statute itself; and a circuit judge, or a sheriff and clerk have no more right to vary from it, than they have to dispense with it altogether. It will not do to say that the greater number, forty, included the lesser thirty-six; and that therefore the law was complied with. The statute goes on to enact, that from the thirty-six jurors, not from any greater number, to be summoned for the first week, the grand jury shall be drawn. If departures from this simple enactment are to be tolerated, and the whole thing opened to the arbitrary discretion of judges

or inferior officers, then the statute has failed of its purpose, and there is no other security for the citizen than the will and caprice of the officers of the law. If those officers can increase the number of the *venire* to any, the slightest, extent, they can increase it till all the persons whose names are liable are included. If they can increase it at all, equal authority can be found to limit and reduce it, even below the number requisite to constitute a grand jury. To tolerate such departures from the statute, would be to defeat its purpose and to subvert its whole policy, which are to mark out distinctly the manner in which the tribunals shall be organized which are invested with the high powers of putting in jeopardy the lives, liberties, and rights of citizens. The whole reasoning of this court in the several cases which have been before it, from McQuillen v. State down to the case of Stokes and Johnson, sustains these views, and shows a proper determination to permit no relaxation of the wholesome guards thrown by law around the citizen for his protection.

*G. T. Swann,* on same side.

To show the error of the court below in overruling the pleas in abatement tendered by the prisoner, it is conceived that the cases of Rawls v. State, 8 S. & M., 559, and McQuillen v. State, 8 S. & M. 587, are conclusive to show the validity of these pleas.

It is insisted, also, that this court, in looking into the whole record, will quash the indictment and discharge the prisoner, because,

1st. The indictment does not sufficiently and distinctly allege any assault upon the person of any one, nor that it was done with a deadly weapon. Ainsworth v. State, 5 How. 242 ; Jones v. State, 11 S. & M. 315.

2d. The name of the prosecutor is not endorsed on the indictment. The memorandum written on the indictment no more designates the person named as prosecutor than it does as a witness. For this it is defective and cannot support any sentence. Cody v. State, 3 How., 27 ; Peter v. State, ib., 433 ; Kirk v. State, 13 S. & M., 406 ; Moore v. State, ib., 259.

3d. Any new indictment that may be framed for the same offense charged in this, will show on its face that the prosecutor is

barred by the statute of limitations; and if the prisoner should be found guilty by a jury, a motion in arrest for this cause will be sustained.   Howard v. State, 13 S. & M., 262.

This court will, therefore, refuse to remand the prisoner, to subject him to a new indictment which must be bad if it charges the time of the alleged offense truly.

*J. F. Cushman*, on same side.

*D. C. Glenn*, attorney general.

SMITH, C. J.:

The plaintiff in error was convicted of an assault with intent to commit murder on an indictment framed under the 33d section, ch. 64, of the statute of 1839, Hutch. Dig., 960.   Numerous objections are urged to the validity of the judgment rendered in the circuit court, all of which, with the exception of that which arises on the third plea of defendant in abatement to the indictment, we deem it unnecessary to notice.   That plea was demurred to and the demurrer was sustained.

The said plea in substance avers that thirty-six persons were not drawn and summoned, as directed by law, to serve as jurors for the first week of the ensuing term of the circuit court of Pontotoc county, and from which, by law, the grand jury for said term were to be selected; but that forty persons were drawn and summoned, and from whom the grand jury, who preferred the bill of indictment, were in fact selected.

The exception to the judgment on the demurrer is based upon the provisions of the 8th section of the statute of March 2d, 1833, Hutch. Dig., 888, which directs that "in the several counties of this state, except the county of Monroe, where the term of the circuit court continues more than one week, the sheriff and clerk shall draw for the first week, in the manner now prescribed by law, thirty-six jurors, out of which the grand juries shall be drawn and shall serve for one week, except the grand jurors who shall serve until they are discharged by the court."

The circuit court for the county of Pontotoc may by law be held for the term of two weeks.

It was said by the attorney general, in the argument at bar, that the county of Pontotoc was not created until many years

after the enactment of said statute. That there is no statutory provision by which the act above quoted is made to apply to the counties thereafter to be organized; and hence it should not be held to regulate the drawing and empanelling juries for counties subsequently created. In reply to this it is sufficient to observe that the said act is general, except as to the county of Monroe, and was manifestly intended by the legislature to apply to all the circuit courts to be holden in the counties then in existence, or which might thereafter be created by statute.

In McQuillen v. State it was holden that a grand jury, composed of members who have not been drawn, summoned, or empanelled in the manner prescribed by law, have no power to find a valid indictment. A grand jury, said the late chief justice, does not, by our law, consist of thirteen men, congregated by the mere order of court or by accident, in a jury box; but it consists of the requisite number of competent individuals, selected, summoned, and sworn according to the forms of law; and if the law be not followed, it is an incompetent grand jury. The same doctrine has since been repeatedly recognized as the settled law of the state. Rawls. v. State, 8 S. & M., 599; Stokes v. State, 24 Miss. R., 621.

It cannot be doubted that the act of the clerk and sheriff, in drawing forty persons instead of the number prescribed by law, was a palpable violation of the statute; and if it should be held valid, an end at once is put to the authority of the law which prescribes the mode in which grand juries are to be constituted. For, if the officers charged with the duty and who are empowered to select by lot, draw forty persons from whom the grand jury may be chosen instead of the legal number, they may, with equal propriety, draw any number, either greater or less, which their caprice may direct. And if the specific directions of the law may be violated in one respect, why not in any or every other? But the same reason which makes it imperative upon the courts to observe the directions of the statute in one case, requires our obedience in every other. The various regulations which have been adopted in regard to the constitution of juries, we apprehend, were designated for wise purposes. They are all intended as guards to protect the liberty of the citizen,

and should be held to constitute an important part of the right of trial by jury. Holding this view of the subject, we are compelled to reverse the judgment, to overrule the demurrer, and to quash the indictment.