THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* DANIEL H. PRIOR, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* MICHAEL T. SMITH, Respondent, et al., Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* MICHAEL T. SMITH, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* DANIEL WILLIGAN and JOHN WILLIGAN, Respondents, et al., Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JAMES S. COLLINS, Respondent.

Third Department, March 7, 1945.

*Nathaniel L. Goldstein, Attorney-General (George P. Monaghan, Deputy Attorney-General in charge of Albany Investigation, Stanley H. Fuld, Special Assistant Attorney-General, Harris B. Steinberg, Herbert Stern* and *A. Cuyler Ten Eyck, Jr., Deputy Attorneys-General,* of counsel), for appellant.

*Eugene G. Hess,* attorney for Daniel H. Prior, respondent.

*Daniel H. Prior,* attorney for Michael T. Smith, Daniel Willigan and John Willigan, respondents.

*Reuben H. Kohn,* attorney for James S. Collins, respondent.

FOSTER, J. These are appeals from orders of the Supreme Court, at an Albany County Special Term, setting aside indictments against the defendants herein which had been found by a Grand Jury empaneled at an Extraordinary Trial and Special Term.

Pursuant to a proclamation by the Governor an Extraordinary Term was convened in Albany County to inquire into alleged election frauds. Subsequently, and by a supplemental proclamation, the scope of the inquiry was enlarged to include, among other matters, any alleged crime and corruption by public officials in the county of Albany, and the investigation of any offenses by persons and corporations who dealt in a business way with local governments, city and county, and their agencies. The local District Attorney was superseded and the Attorney-General and his assistants took over the investigation. On December 20, 1943, the empaneling of a grand jury was commenced. The examination of talesmen consumed twelve days, and eight panels, of thirty-six talesmen each, were summoned. Of the two hundred and eighty-eight persons thus called one hundred and seventy-three failed to appear, or were excused prior to any *voir dire* examination for reasons which must be presumed to have been sufficient. The remaining one hundred and twenty-five talesmen were examined under oath as to their qualifications, and from these a Grand Jury of twenty-three members was finally selected.

The principal question involved on these appeals is whether the Grand Jury as thus selected and which returned the indictments herein was a legally constituted body.

It is charged by the defendants that this Grand Jury was not chosen by lot, and that numerous prospective jurors were summarily barred from service without being challenged for any of the causes set forth in section 239 of the Code of Criminal Procedure. The court at Special Term upheld these contentions.

The .only parts of the Code section mentioned that are pertinent are these:

" A challenge to an individual grand juror may be interposed for one or more of the following causes and for these only: * * *

" 6. That a state of mind exists on his part in reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion that he can not act impartially and without prejudice to the substantial rights of the party challenging ".

Obviously, reference to the " case " means any matter that might become the subject of inquiry, and " either party " means the people or any defendant who might be the subject of investigation. Either counsel for the people or counsel for any person held to await the action of the Grand Jury may challenge for cause (Code Crim. Pro., § 237). None of the defendants involved in these appeals had been held to await the action of the Grand Jury and hence were not represented at the time of the *voir dire* examination. One William J. Shea had been so held and he was represented by counsel.

The " state of mind " referred to in the subdivision of the statute quoted, as a ground of challenge for cause, means actual bias as contrasted to implied bias. The context of the paragraph would so indicate, but in addition, the identical language is used and defined in section 376 of the same Code. Bias must be given the meaning commonly attached to it, when used to define a mental attitude, i.e., " a leaning of the mind; propensity or prepossession toward an object or view, not leaving the mind indifferent; * * * *tendency; inclination; prejudice.*" (Webster's New International Dictionary [1931 ed.] — emphasis supplied.)

Thus it was incumbent upon the Presiding Justice to determine, in the exercise of a sound discretion, and when the occasion arose, whether a prospective juror was biased as to any matters that might be the subject of inquiry, or as to any persons who might be subject to investigation. Manifestly the existence of bias, since the same is purely a mental attitude, is a difficult matter to determine. The latitude of the court's discretion in this regard cannot be formulated within any precise boundaries, because if the issue was raised he was confronted in each instance with a question of fact requiring him to take into consideration various factors and to apply a sound judgment to the whole. Quite obviously the latitude of the court's discretion in this connection must necessarily be more extensive than that

exercised in the selection of a trial jury. In the latter instance the situation embraces and is limited to a known defendant and a precise issue defined by indictment, and moreover there is leeway for either party by way of peremptory challenge. In the selection of a grand jury there is no such clear cut limitation, and no provision for peremptory challenges. In such a case the court has the duty as well as the right to consider all of the circumstances revealed; the scope and background of the investigation; the relation, friendship or acquaintance of a prospective juror with any of the people who might be involved, or any connection or attitude of the juror with any of the matters subject to investigation; and not only the answers of the juror under oath, but also his appearance and demeanor on the stand. He is not bound to accept the statement of a juror that he can act impartially.

Since the atmosphere and all of the factors involved in a *voir dire* examination of prospective grand jurors can never be clearly reconstructed from a printed record a very considerable reliance must be placed upon the trial court's discretionary judgment in any review by an appellate court. Certainly the fact that we may differ with the court's rulings in several instances of exclusion would not warrant the conclusion that he had abused his discretion. Something more than merely errors in the exercise of discretionary judgment must be shown to justify a determination that the Grand Jury as finally selected was illegally constituted, and the defendants' constitutional rights invaded. It must be shown that prospective jurors, clearly qualified to act impartially, were consistently and summarily barred from service so that the Grand Jury as finally selected was not one chosen by lot and in accordance with the statute.

It is not practicable within the fair limits of an opinion to discuss in detail the examination of every talesman who was excluded. Of the one hundred and twenty-five talesmen whose examination appears in the record in *People* v. *Harris* (268 App. Div. 731, decided herewith) thirty-two were excused by their own request or upon consent; two on account of age; twenty-three admitted that it would or might cause them embarrassment to sit; and seven admitted actual bias. Of those who admitted possible embarrassment many asserted that they could nevertheless act impartially. Defendants assert that their rejection was wholly improper, but in view of the wide scope of the investigation, the extent and nature of their acquaintances the trial court acted clearly within his discretionary powers in

rejecting them. The total of talesmen thus excluded amounted to sixty-four. From the sixty-one prospective jurors left twenty-three were selected whose qualifications do not appear to be challenged. Thirty-eight were excluded. Of these I think in many instances it was a close question as to whether they should have been excluded, and in some instances if the printed record alone is considered it would appear that the exclusions were erroneous, but in reviewing these matters the nature and scope of the investigation must again be emphasized. It was quite apparent then, as well as now, that it might involve many public officials and prominent citizens in the city and county of Albany, and in view of that possibility it cannot be said as a matter of law that the trial court abused his discretion in rejecting those talesmen who had business connections with those who might be the subject of inquiry, or were their friends, and those who had relatives in public office; or those whose long acquaintanceship with persons under scrutiny would justify an inference of friendship and interest. The paramount consideration in the selection of a grand jury, or any jury for that matter, is to secure one whose members are wholly unbiased. Under the circumstances disclosed the trial court was confronted with a delicate and difficult task, and if he committed errors of judgment they were not apparently the result of any plan on his part or that of the Assistant Attorney-General to circumvent the statute and summarily bar any group of jurors who were qualified beyond question.

Complaint is made as to the form of challenge by the Assistant Attorney-General, or that no challenge at all, in the proper sense of the word, was made in some cases. The record indicates that in many cases the form of challenge was inept and inaccurate, but these are matters of form and do not relate to substance. The Code prescribes no particular form of challenge and so long as the essence of the objection is shown it is sufficient for the court to rule upon. It is also urged that error was committed in permitting the Assistant Attorney-General to submit a written list of names to each prospective juror for the purpose of having the juror indicate his acquaintanceship. This was in no way prejudicial since each juror was subsequently examined as to the people he knew and their names were revealed in the vast majority of cases in the course of his oral examination.

In conclusion it may be noted that a considerable portion of the rulings challenged on these appeals have been before this court and the Court of Appeals upon an application for an

order of prohibition. (*Matter of Shea* v. *Swift*, 267 App. Div. 853, 854, affd. 292 N. Y. 116.) Relief by way of prohibition was denied without comment by a majority of either court as to the correctness of the rulings attacked.

The orders appealed from should be reversed and the indictments reinstated.

HEFFERNAN, J. (dissenting). The People have appealed from five orders of the Albany Special Term of the Supreme Court (MURRAY, J.) quashing and dismissing the five indictments herein which were returned against respondents by a Grand Jury empaneled for an Extraordinary Special and Trial Term of the Supreme Court convened in Albany County by executive proclamation.

The only question that need be considered on this appeal is whether or not the Grand Jury which indicted respondents was a legally constituted body. The Special Term held that it was not.

Before discussing the merits of the issue involved, an issue of tremendous importance to every citizen of the State, it is well to look into the origin and history of the grand jury system.

The institution of the grand jury is of very ancient origin; it goes back many centuries to the early history of England. From the accounts of commentators on the laws of that country it would appear that its origin is lost in obscurity. It is a product of the common law, the civil law making no provision for a body like a grand jury. It came to our country as a part of the common law. The grand jury was, at first, a body not only of accusors, but of triers as well, but at the time of the settlement of this country it was an informing and accusing tribunal only. It originated when there raged a conflict between the rights of the subject and the power of the crown; it served in England as a barrier between the king and the rights of the subject and secured the latter against oppression from unfounded prosecutions of the crown. In our State the institution has been perpetuated for the purpose, and is designed as a means, not only of bringing to trial persons accused of public offenses on just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it come from the government or be prompted by partisan passion or private enmity. (38 C. J. S., Grand Juries, § 1; 24 Am. Jur., Grand Jury, § 3.)

The Constitution of this State (art I, § 6) provides that " no person shall be held to answer for a capital or otherwise

infamous crime * * * unless on indictment of a grand jury ''.

The grand jury is a constituent part of the court and is under its supervision and control. It can only act in the manner prescribed by law. The functions of the grand jury are of the highest importance in the due administration of justice.

A grand jury is a tribunal invested with no ordinary authority. Its power to accuse a citizen of any offense, without his presence and without evidence in his favor, thus casting upon him the odium of an indictment, emphasizes the importance of enforcing those prudential regulations required by statute in the selection of jurors. (*Keitler* v. *The State,* 4 Iowa 291, 292, 293.) A grand jury has such broad inquisitorial powers that it touches every citizen in his reputation, his liberty, his life. It is of supreme importance that the method of its selection and its composition should be above the slightest suspicion.

The Supreme Court of the United States in *Pierre* v. *Louisiana* (306 U. S. 354, 362) said: '' Principles which forbid discrimination in the selection of petit juries also govern the selection of grand juries ''. Section 223 of the Code of Criminal Procedure provides as follows: '' A grand jury is a body of persons, returned at stated periods from the citizens of the county, before a court of competent jurisdiction, and *chosen by lot,* and sworn to inquire of crimes committed or triable in the county ''.

Section 239 of the Code of Criminal Procedure provides only six causes for challenge to an individual grand juror, the first five of which are immaterial here, so that we are concerned only with the sixth: '' That a state of mind exists on his part in reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion that he can not act impartially and without prejudice to the substantial rights of the party challenging.''

Not only does this section of the Code limit the number of causes of challenge but it also limits the power of the court to discharge therefor to '' *these only* ''.

The grounds prescribed by this statute are exclusive. A specific enumeration of grounds negatives the existence of others.

A challenge to an individual grand juror must be tried by the court in the same manner as challenges in the case of a trial juror. (Code Crim. Pro., § 240.) The only ground for challenge of a trial juror for actual bias is prescribed in the first sentence of subdivision 2 of section 376 of the Code of Criminal Pro-

cedure, the language of which is practically identical with that of subdivision 6 of section 239, above quoted. But the second sentence of subdivision 2 of section 376 provides that a previous opinion or impression on the part of a juror " is not a sufficient ground of challenge for actual bias, to any person otherwise legally qualified, if he declare on oath, that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied, that he does not entertain such a present opinion or impression as would influence his verdict ". In a challenge for actual bias, the cause stated in subdivision 2 of section 376 must be alleged. (Code Crim. Pro., § 380.) If the facts asserted as ground of challenge for actual bias be denied, the challenge must be tried by the court (Code Crim. Pro., § 382); the challenged juror may be examined as a witness to prove or disprove the challenge (Code Crim. Pro., § 383); the rules of evidence applicable to the trial of other issues govern the trial of the challenge (Code Crim. Pro., § 384); and the court, in trying the issue of fact raised by such a challenge, is not bound by the juror's declaration but may act " ' from observation of the appearance of the juror, his age, intelligence, his manner on the stand, and his answers to questions.' " (*Balbo* v. *The People*, 80 N. Y. 484, 492, 495.)

None of these respondents had been held to answer before the Grand Jury returned indictments against them and hence they were not represented before that tribunal. A man named Shea had been held for the Grand Jury and he was represented by counsel who objected to the method of selecting the jurors.

The question is raised here as to the right of respondents to attack the legality of the Grand Jury after indictment.

The courts are not in accord as to when and how an accused may object to the legality of the organization of the Grand Jury that indicted him and to the qualifications and competency of the grand jurors. Some early cases in other jurisdictions have gone so far as to hold that objections to the personal qualifications of some one or more members of the grand jury or to the manner in which the grand jury was empaneled are available only by challenge and may not be made after the indictment is returned into court. This however is an extreme doctrine and would in many cases operate to deny altogether the right to question the qualifications of those who found the indictment, for the accused may not know, indeed is not of right entitled to know that his acts are the subject of examination by the grand jury. In a majority of the jurisdictions in

this country the right of the accused to assail the indictment otherwise than by challenge is recognized. (27 Am. Jur., Indictments and Informations, § 160; 42 C. J. S., Indictments and Informations, § 207; *Doyle* v. *The State*, 17 Ohio 222, 225, 226; *Carter* v. *Texas*, 177 U. S. 442, 447.) In *McQuillen* v. *The State of Mississippi* (8 Smedes & Marshall 587, 597 [Miss.]) the court said: " * * * the grand jury may find an indictment against a person who is not in court; how is he to avail himself of a defective organization of the grand jury? If he cannot do it by plea, he cannot do it in any way, and the law works unequally by allowing one class of persons to object to the competency of the grand jury, whilst another class has no such privilege. This cannot be. The law furnishes the same security to all, and the same principle which gives to a prisoner in court the right to challenge, gives to one who is not in court the right to accomplish the same end by plea * * *." I think the respondents' motions to dismiss are timely.

The empaneling of the Grand Jury occupied twelve days and two hundred and eighty-eight talesmen were summoned. The process of empaneling the Grand Jury was about half completed before any challenge was actually interposed by the prosecutor and tried. Up to that time at the prosecutor's suggestion the court discharged jurors without challenge for any of the causes enumerated in the statute. Of the total number of jurors summoned one hundred twenty-five were examined, the others having been excused for reasons not material here. The prosecutor excused fifty-seven veniremen. Respondents assert that these exclusions were arbitrary and in violation of law.

It would serve no useful purpose to discuss the rulings in respect to each prospective juror who was rejected.

I am convinced that in thirty-four instances the prosecutor's challenges should not have been sustained by the court. Prospective jurors who possessed all the legal qualifications were challenged by the prosecutor and rejected by the court for reasons not recognized by law. Challenges were sustained because a juror " might be subject to bias "; or because of the prosecutor's knowledge of " where the investigation might lead "; or " on account of his political activities "; or " because of the facts that exist or may exist ". In every instance the jurors thus barred swore that they could perform their duties impartially.

I have only quoted a few of the reasons assigned for successful challenges by the prosecutor. Many other jurors were barred for similar reasons equally unsubstantial.

In *United States* v. *Eagan* (30 F. 608, 609) a case where a defendant challenged a grand juror because of his political affiliations, Judge BREWER speaking for the court said: " * * * the fact that a juror belonged to one party, and was a strong partisan, would be no ground of challenge, even if presented before the jury was impaneled and sworn, any more than a challenge on the ground that he belonged to one church, and was a strong and bigoted adherent of that church. Neither party affiliation nor religious beliefs nor church adhesion affect the qualifications of a juror, grand or petit; * * * ". In a concurring opinion his colleague, Judge THAYER, at p. 612 said: " The fact that a man is a member of any political party is not a disqualification for jury service in any case."

The record before us conclusively demonstrates that the Grand Jury which indicted respondents was not chosen by lot as the law directs; on the contrary its members were selected by the prosecutor and the judge.

The learned counsel who presented appellant's cause at our bar, with commendable fairness, has neither in his argument nor in his brief, attempted to justify the court's rulings in rejecting many qualified jurors. His argument is that twenty-three qualified grand jurors were ultimately selected and that consequently respondents have not been prejudiced and that this court should condone the flagrant errors committed by the court below in the method of selection.

The irrefutable answer to that argument is that in determining the eligibility of grand or petit jurors the statute provides the procedure to be followed and if that is not followed the aggrieved party is not required to show that he has been prejudiced. (*Hildreth* v. *City of Troy,* 101 N. Y. 234; *People* v. *McQuade,* 110 N. Y. 284.)

In the *McQuade* case the Court of Appeals in condemning the rejection of a juror who was excluded because he was acquainted with one of the counsel for defendant and had advised with him on some occasion not connected with the case, said at pp. 303–306: " The juror was excluded because he was acquainted with one of the counsel for the defendant and had advised with him on some occasion not connected with the case on trial. We know of no such cause of challenge. The Code defines certain relations between a juror and a party as grounds of challenge for implied bias, among which is the relation of client and attorney, and confines the causes of challenge for implied bias to the enumerated cases, and the cause for which this juror was excluded is not among them. (Code, § 377.) The Code also defines

actual bias as the existence of such a state of mind on the part of the juror in reference to the case, or to either party, as satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging (§ 376), and declares that a challenge for actual bias cannot be taken for any other cause. (§ 378.) We have found no precedent for excluding a juror upon the ground assigned by the court, and, in reason, it seems quite insufficient, nor is it warranted by the statute. * * * The legal right of a defendant may be violated as well by excluding competent jurors, as by admitting incompetent ones. He is entitled in all cases to a fair and impartial jury, but he is also entitled to insist that the jury shall be selected according to methods established with a view to secure a just and impartial administration of the jury system. The law provides for the exclusion of incompetent jurors from the panel, and, also, of a limited number by peremptory challenge. There must be either legal cause or a peremptory challenge to justify setting aside a juror properly drawn. The court cannot arbitrarily, and without cause, set aside a competent juror. Neither the court nor the parties can select the jury except in the way pointed out by the statute. The intentional omission of the sheriff to summon one or more of the jurors drawn to serve at a court is, by the Code, made a ground of challenge to the whole panel. (§ 362.) This section recognizes the principle that the legal right of a defendant in the selection of a jury, may be violated, although he may not be able to show that any of the jurors by whom he was tried were not fair or impartial. This court had occasion to consider this general subject in *Hildreth* v. *City of Troy* (101 N. Y. 234), and we adhere to the views then expressed.''

The selection of grand jurors by methods similar to those adopted in the record before us has been disapproved by the courts of the United States and by the overwhelming number of our sister States. (*Pierre* v. *Louisiana,* 306 U. S. 354, *supra; Avirett* v. *State,* 76 Md. 510, 536, 538; *State* v. *Symonds,* 36 Me. 128, 132; *McQuillen* v. *The State of Mississippi,* 8 Smedes & Marshall 587 [Miss.]; *State* v. *Williams,* 5 Port. [Ala.] 130, 135; *State* v. *Smith,* 145 La. 1091, 1098; *Portis* v. *The State of Mississippi,* 23 Miss. 578, 582; *Keitler* v. *The State,* 4 Iowa 222, *supra; Welch* v. *The State,* 68 Miss. 341; *Clare* v. *State,* 30 Md. 164, 177; *Wilburn* v. *The State,* 21 Ark. 198, 201; *Dutell* v. *The State,* 4 Iowa 125; *Fitzgerald* v. *The State of Wisconsin,* 4 Wis. 395, 398; *Hill* v. *Texas,* 316 U. S. 400, 406; *State of*

*Oregon* v. *Lawrence,* 12 Ore. 297, 300; *Dunn* v. *United States,* 238 F. 508, 512; *Leathers* v. *The State of Mississippi,* 26 Miss. 73, 78.)

An indictment returned by a packed grand jury is a nullity. (*Pierre* v. *Louisiana, supra.*)

I shall now discuss the authorities upon which appellants rely. In my opinion they are distinguishable. *People* v. *Jewett* (3 Wend. 314) and *Dolan* v. *People* (64 N. Y. 485) were decided prior to the adoption of the Code of Criminal Procedure which abolished all prior forms of pleadings in criminal actions. These cases can no longer be regarded as the law of the State. In *People* v. *Petrea* (92 N. Y. 128), where a grand jury was drawn under an invalid statute, the court held that no constitutional right of the defendant was invaded since the jurors were drawn in the proper manner, were regularly summoned, empaneled and sworn and were qualified to sit as grand jurors. The court decided that the jurors were selected under color of law and semblance of legal authority and hence were a *de facto* jury.

In *People* v. *Hooghkerk* (96 N. Y. 149) the indictment was returned by a grand jury selected under the same invalid statute referred to in the *Petrea* case. There the defendant attempted to challenge the entire array in disregard of the specific provision of section 238 of the Code of Criminal Procedure.

*Matter of Shea* v. *Swift* (292 N. Y. 116) turned entirely upon the question as to whether or not an order in the nature of prohibition should be issued against the Extraordinary Term of the Supreme Court. No other question was decided in that case.

There are two other cases upon which appellants rely, *State* v. *Wescott* (194 Wis. 410) and *State* v. *Guthrie* (185 Wash. 464), which sustain their contention. These cases are not in harmony with those of our Court of Appeals or with the authorities in other jurisdictions to which I have already referred. We should not adopt the reasoning of those two discordant utterances.

Under our form of government it is of paramount importance to the peace and harmony of society, not only that the administration of justice and the punishment of crime should be impartial, but it should be so administered as to merit public confidence. If the procedure adopted in the cases before us should receive judicial approbation one need not be possessed of the power of divination to foretell the widespread and disastrous consequences that could ensue. The right to select a grand jury *by lot* as required by law will no longer exist; it

will remain merely as a myth in our law. An unscrupulous or overzealous District Attorney with the connivance of a weak or a complaisant judge may pack any grand jury and thereby threaten the liberty of every citizen. To place such absolute power in prosecuting officers and judges, would, in the case of designing and corrupt officials, enable them to administer the criminal law for the advancement of their own sinister purposes, and would produce results highly reminiscent of the days when the Star Chamber and the Court of High Commission cast their baleful shadows over every English home.

If the people of the State desire a change in the procedure for the selection of grand jurors the remedy is with the Legislature; it cannot be accomplished in the courts except by judicial usurpation of power.

The orders appealed from should be affirmed.

HILL, P. J., BREWSTER and LAWRENCE, JJ., concur with FOSTER, J.; HEFFERNAN, J., dissents in opinion.

Orders appealed from reversed and indictments reinstated.