THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* FRANK S: HARRIS, JAMES J. McGUINESS and FRANK J. CASSIDY, Respondents.

Third Department, March 7, 1945.

Nathaniel L. Goldstein, Attorney-General (George P. Monaghan, Deputy Attorney-General in charge of Albany Investigation, Stanley H. Fuld, Special Assistant Attorney-General, Harris B. Steinberg, Herbert Stern and A. Cuyler Ten Eyck, Jr., Deputy Attorneys-General, of counsel), for appellant.

Robert E. Whalen, attorney (George Myers and M. Michel Dobris of counsel), for respondents.

BREWSTER, J. One of the grounds upon which the indictment in this cause has been set aside by the court below is that the evidence presented to the Grand Jury which found it is insufficient, though unexplained or uncontradicted, to warrant a conviction of the crime charged. A review of the order appealed from, as made upon such ground, requires a review of the evidence. It has been disclosed by an order granted at Special Term for the inspection of the Grand Jury minutes. It may be recapitulated as follows: On April 27; 1944, the defendant Cassidy had held the office of Commissioner of the Department of Water and Water Supply in the City of Albany for about eight years, and in that department he had been employed for nearly twenty-two years. On said day he was duly summoned before a Grand Jury sitting in connection with an Extraordinary Term of the Supreme Court holden in said city and duly appointed by order and direction of the Governor of the State. He was thus called to testify concerning the conduct of his office and the performance of his official duties and, upon being requested to sign a waiver of immunity against subsequent criminal prosecution on account of any matter or thing concerning which he might be called upon to testify or produce evidence, he declined to do so. Thereupon he was not sworn as a witness but was excused from further attendance. Later that day a Deputy Attorney-General in charge of the Grand Jury's investigation, by letter, informed the defendant Harris, as Acting Mayor of the City of Albany, of Cassidy's refusal to execute the waiver and directed attention to the pertinent constitutional provision, which is as follows " * * * any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his

official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall be removed from office by the appropriate authority or shall forfeit his office at the suit of the attorney-general.'' (State Const., art. I, § 6.) To this notification the Acting Mayor replied the following day advising that he had referred the matter to the Corporation Counsel of the City, defendant McGuiness. The Acting Mayor's letter bears an Albany postmark of 7:00 P.M. of said day, which was a Friday, and it appears to have been received by the Deputy Attorney-General on the following Monday, May 1st. On the latter day the summons in an action against said Cassidy was dated in a suit by the Attorney-General commenced for the forfeiture of his office, the complaint therein having been verified the day following, or May 2, 1944. On the twelfth day following, the Board of Estimate and Apportionment of the City of Albany met and, following prior conferences upon the subject which had taken place between the Corporation Counsel and the other members present at said meeting, the former offered a resolution which was unanimously adopted by all present, the terms and effect whereof were to create a new office or position in the Department of Water and Water Supply of said city, effective as of May 15, 1944, viz., Superintendent of Water Rent Delinquencies, and it fixed the salary of said position and generally defined its duties, the creation or establishment of which was authorized by law. (Second Class Cities Law, §§ 16, 74, 95; Local Laws, 1935, No. 2 of City of Albany.) There is evidence that this was in culmination of a plan which had been discussed and advocated by the Mayor of the City and other officials over a period of some two years. A day or two thereafter and after consulting with the defendant McGuiness as Corporation Counsel, the Acting Mayor determined to bring about the appointment of the defendant Cassidy to the new position. This, the evidence is, was accomplished in the following manner: On May 19th, and while the defendant Cassidy was absent from the City and County of Albany on a brief visit to New York City, one Andrew V. Kelly, Deputy Commissioner of Water and Water Supply, after being advised by the Acting Mayor of his wishes, and being authorized so to do by section 5 of Local Law No. 2, 1935, of the City of Albany, made the appointment, and the following day upon Cassidy's return to the City of Albany he accepted and qualified in said new position, and in doing so, by virtue of section 19 of the Second Class Cities Law, he thereupon vacated his former

office of Commissioner of Water and Water Supply. Two days later Cassidy answered in the Attorney-General's forfeiture suit and, among other things, denied that he held the office, the forfeiture of which was sued for. On July 20, 1944, on motion of Cassidy's counsel, the Attorney-General's suit against him was dismissed at an Albany Special Term. It was substantially upon such evidence that the defendants have been charged with a criminal conspiracy to commit acts " *for the perversion or obstruction of justice, or of the due administration of the laws*," in violation of subdivision 6 of section 580 of the Penal Law. It is for us to determine whether this evidence, together with all reasonable inferences which may be drawn therefrom, is sufficient in law to support defendants' conviction of the crime charged.

When defendant Cassidy refused to execute the waiver of immunity upon being called to testify, it is plain that he then incurred liability to removal from his office by " appropriate authority " and, in the alternative to its loss by forfeiture at the suit of the Attorney-General. What concept or form of " justice " and what " due administration of the laws " was it, then, and from then on, we may ask, which was susceptible of perversion or obstruction? Here the indictment makes answer, viz., the effectuation of the constitutional provision by Cassidy's removal from office by the defendant Harris who, as Acting Mayor, had power to remove him at his pleasure (Local Laws, 1935, No. 2 of City of Albany, § 4), and the continuance to judgment of the suit for forfeiture commenced by the Attorney-General.

The constitutional provision above cited has a purpose beyond that of the mere imposition of liability to the penalty it prescribes. Paramount is the objective of facilitating a grand jury inquiry into the affairs of public office and official conduct. Without the testimony of the officer himself the investigation could ofttimes be hampered or rendered ineffectual. Since such a witness' reliance upon constitutional rights and privileges could bar recourse to such assistance, and other legal guaranties give him immunity from prosecution, the liability to the penalty of loss of office has been prescribed in the given instance to secure a fuller scope of grand jury inquiry and action in such cases. For one to rely upon the protection of the privileges and immunities afforded by fundamental law, and other law, is, of course, no offense. For one to refuse to waive them in the stated instance may be reprehensible, but it is neither a crime nor legal evidence of any criminal conduct. But the mandate is

that by so doing he incurs liability to the loss of his office by the *alternative methods prescribed.* Those methods have important significance. Their circumvention and avoidance could nullify the paramount objective in that public officers might be thereby enabled to refuse the waiver with relative impunity by a subsequent shifting and exchange of related office or position through complicity with friendly appropriate authority. Such an avenue of escape from the odium and damage consequent upon direct removal, judgment of forfeiture, or even a "running away" by resignation, would tend to thwart the salutary purpose of the penalty. Assuming, as we must, that Cassidy's refusal to waive was his knowing and conscious act, his liability became provable. From then on a criminal combination for the perversion or obstruction of justice, or of due administration of laws, would be to agree corruptly to the doing of that which would delay, thwart, or prevent the achievement of the end result called for by the liability incurred, viz., *the loss of the office by the procedure prescribed.* The claim of the appellants is that the evidence may be said to show beyond a reasonable doubt that the way and manner these defendants and others conspired to avoid that end result and then acted to such end, in the allegedly artful, strategic, cunning, and circumventing manner which has been described, constituted the crime charged. There is but slight evidence to show that the end result in the accomplishment of which the defendants participated, did not in fact and in law effectually separate Cassidy from the office he held when he refused to execute the waiver. But such was far different from the methods prescribed by law. There is evidence that the new office which was created and to which he was appointed had long been considered by the Mayor of the City and others as being in the local public interest, and that Cassidy by long experience and capability, was, in the defendants' judgment, qualified for it; and it is legitimately inferable from the evidence that, he having incurred liability for and being in imminent danger of losing the office he had held so long, the defendants and others conspired and acted, as the evidence discloses, for the purpose of avoiding the penalty of his direct removal from office, and a judgment of its forfeiture, as well as to retain his services for the city in another capacity and position in the same city department.

It is essential to the crime of conspiracy that there be a "corrupt agreement * * * to do an unlawful act, unlawful either as a means or as an end." (*People* v. *Flack et al.,* 125 N. Y. 324, 332.) In view of the statutory specification of the

conspiracy charged, we think it must be said that the *avoidance* of the constitutionally prescribed methods for the infliction of the penalty which Cassidy incurred was, as the evidence shows it to have been aimed at and accomplished, an end result which was unlawful, and that the evidence presented to the Grand Jury is sufficient to support a finding that defendants conspired to that end. True it is that the acts performed by the defendants in furtherance of their combination had the sanction of law, but it is not essential to criminal liability for conspiracy that the acts contemplated and employed in carrying it out should constitute in and of themselves a criminal offense or indeed be unlawful. The gravamen of the offense of conspiracy is the combination. At common law the unlawful agreement itself was sufficient to constitute the offense. (*People* v. *Mather,* 4 Wend. 229.) While by statute (Penal Law, § 583), subject to certain exceptions, some overt act to effect it is made essential, it matters not that such acts are lawful in and of themselves when considered apart from the unlawful agreement. If, even partly effected, and however done, an agreement has been corruptly entered into for the achievement of an unlawful end, the offense is complete. And this, even though the end result aimed at in and of itself be not a criminal offense. The unlawfulness of the objective is sufficient to cast the agreement into the category of crime. (*People* v. *Sheldon et al.,* 139 N. Y. 251, 264–266; *People* v. *Fisher,* 14 Wend. 9, 15.) The evidence, we think, is sufficient to support a finding that the defendants entered into a combination to avoid, defeat and render impossible the due execution of the methods prescribed by the Constitution for Cassidy's removal from the public office he held. For them to have conspired and acted in furtherance of such a purpose may, we think, be said to have constituted the crime charged if the triers of the fact should find it to have been corruptly done. This, because such conspiracy may be said to have had for its ultimate end a stoppage of the due administration of the laws as required by the constitutional provision. The liability to loss of office which Cassidy incurred was such that, for aught that appears, justice required that he be removed by the defendant Harris, or, such failing, that its forfeiture be adjudged on the merits at the suit of the Attorney-General. Such, too, did the due administration of the laws require. A combination understandingly entered into by intelligent and deliberate agreement to act in such a way that such required administration of the laws be interfered with and prevented, and the attainment of justice consequent thereupon be perverted

and obstructed, was an unlawful objective, and the statutory specification of the conspiracy charged so pronounces it.

Neither can we approve the other ground upon which the indictment has been set aside by the order appealed from to the effect that the Grand Jury which found it was illegally constituted. (See *People* v. *Prior* and companion cases decided herewith, 268 App. Div. 717.)

The order appealed from should be reversed and the indictment reinstated.

FOSTER, J. (dissenting). If the rationale of the majority opinion is correct, then by the same process of reasoning a criminal conspiracy might be found if the defendants Harris and McGuiness had advised Cassidy to resign and he had followed their advice. In that event the majority conception of justice and due administration of law would have been equally thwarted, because Cassidy's removal in such a case would not have been in conformity with either method of removal prescribed by the Constitution. I cannot assent to this proposition, and unless the proof clearly shows that the end attained was unlawful, then I fail to see how it can be found that a criminal conspiracy existed.

Cassidy held the office of Commissioner of the Department of Water and Water Supply in the City of Albany. He was called upon to sign a waiver of immunity and testify concerning the conduct of this office. He refused to do so, and his office thereby became subject to forfeiture by action on the part of the Mayor, or by suit at the instance of the Attorney-General, *but only so long as he attempted to hold it.* There was nothing from a legal viewpoint to prevent his resignation or divestiture by other means. Nor was he under any disability to assume another and different office. The constitutional penalty ran only to the office concerning which he refused to testify, and this penalty cannot be enlarged by implication or judicial construction.

The new office which he assumed was not the same office he vacated. It was different in name and different in character. From the viewpoint of political morals the transaction and the manner in which it was carried out might well be criticized. But we are not concerned with an issue of political morals. The question here is whether the proof might convince a trial jury, beyond a reasonable doubt, that the crime charged was committed. The answer to this question is not to be legally met by the assertion that the jury might draw this or that inference. This is not a civil case where the People might be

entitled to the most favorable inferences to be drawn from the testimony. The test here is whether the only reasonable inference to be drawn from the testimony is that the defendants conspired to place Cassidy in the same office, only under a different name. The proof submitted does not, in my opinion, meet such a test.

The order dismissing the indictment should be affirmed.

HEFFERNAN, J. (dissenting). I concur in the opinion of Mr. Justice FOSTER. In addition to the reasons given by him, I vote to affirm the order on the ground that the Grand Jury, which returned the indictment, was illegally constituted for the reasons set forth in my opinion in *People* v. *Prior* (268 App. Div. 717, 724) decided herewith.

HILL, P. J., and LAWRENCE, J., concur with BREWSTER, J.; FOSTER, J., dissents in an opinion; HEFFERNAN, J., dissents in memorandum.

Order reversed on the law and indictment reinstated.