In the Matter of the 2000–2001 DISTRICT GRAND JURY IN AND FOR THE FIRST JUDICIAL DISTRICT, State of Colorado,

and Concerning the City of Black Hawk, Petitioner.

No. 03SC209.

Supreme Court of Colorado, En Banc.

Sept. 13, 2004.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Lee D. Foreman, Rachel A. Bellis, Denver, Colorado, Attorneys for Petitioner.

David J. Thomas, District Attorney, Dennis Hall, Senior Deputy District Attorney, Golden, Colorado.

Justice KOURLIS delivered the Opinion of the Court.

## I. Introduction

In this case, the City of Black Hawk ("Black Hawk") contests the court of appeals' decision in *In re 2000–2001 District Grand Jury in and for the First Judicial District, State of Colorado, and Concerning the City of Black Hawk*, 77 P.3d 779 (Colo.App.2003) (*"Grand Jury II"*), in which that court declined to interpret section 16–5–205.5, 6 C.R.S. (2003) to permit discovery of grand jury records. The statute authorizes a grand jury to release a report of its investigation even when it does not issue an indictment, and allows a person named in the report to issue a published response, to be included in the report itself.

Here, Black Hawk and several of its officials were parties named in a grand jury report, and were therefore entitled to submit a response to the report. Prior to finalizing a response, they sought discovery of much of the grand jury record. The trial court rejected the request and the court of appeals affirmed, holding that nothing within section 16–5–205.5 requires a district court to permit discovery of the grand jury record.

We granted certiorari to determine whether section 16–5–205.5 grants a party named in a grand jury report the right to inspect the grand jury record. We now hold that section 16–5–205.5 grants no such right. Neither the plain language of the statute nor principles of due process require a district court to permit wholesale discovery of the grand jury record. Accordingly, we hold that neither the district court nor the court of appeals committed any error in this case.

## II. Facts

The case before us resulted from a citizen complaint filed in the spring of 2000 against Black Hawk. The complaint alleged that various Black Hawk officials attempted to block an annexation proposed by the City of Central City. The district attorney for Gilpin County submitted that complaint for grand jury review.

Following an investigation, the grand jury issued no indictment against Black Hawk officials. However, the grand jury did prepare a report of its investigation and sought authorization from the district court to release the report pursuant to section 16–5–205.5. In June 2000, the district court approved the release of the grand jury report and ordered a copy to be sent to all persons named therein.

As required by section 16–5–205.5(3), all persons or businesses named in the report ("named parties") were so notified. Section 16–5–205.5(3) permits these named parties to prepare a response to the report, which response will then be included in the published report itself. Black Hawk was one of the named parties and it sought to prepare a response.

Before submitting its response, however, Black Hawk filed several motions with the district court that was supervising the grand jury. In some of those motions, Black Hawk sought discovery from and inspection of the record used to compile the grand jury report. Among other information, it sought disclosure of transcripts, exhibits, motions, orders, correspondence, instructions, jury lists, and information relating to the grand jury's impanelment.

On September 22, 2000, the district court denied all motions for discovery and inspection and directed the release of the report and all filed responses. It ruled that "[section] 16–5–205.5 does not provide for the release of such information. When no indictment issues, all that is allowed is the release of the report. The time-honored principles of grand jury secrecy remain in place."

Black Hawk appealed the denial of discovery to the court of appeals, and requested that the district court immediately stay its September 22, 2000, order. On September 29, 2000, the district court issued a stay of the order, to expire on October 16, 2000, unless otherwise extended. On October 5, 2000, Black Hawk filed a motion to quash and suppress the grand jury report. In that motion, Black Hawk argued that: (1) the grand jury was improperly impaneled; (2) the grand jury had no jurisdiction to author its report; and (3) the district attorney gave improper instructions to the grand jury before issuing the report.

On October 6, 2000, this court accepted original jurisdiction over the case to address whether the grand jury had jurisdiction to investigate and issue a report upon the subject of the citizen-filed complaint. Black Hawk was invited to—and did—join in that appeal.

In *In re 2000–2001 District Grand Jury in and for the First Judicial District Concerning the Grand Jury Report on the Proland Annexation,* ("*Grand Jury I*"), 22 P.3d 922, 928–29 (Colo.2001), we ultimately held that the grand jury had jurisdiction over the annexation dispute and that both the district court and the district attorney complied with section 16–5–205.5 in authorizing the release of the report. Accordingly, we remanded

that case back to the district court to address unresolved matters and release the report. On remand, the district court took up Black Hawk's pending motion filed on October 5, 2000. Without conducting a hearing, the court denied Black Hawk's motion to quash and suppress on September 10, 2001. Black Hawk appealed that decision on September 26, 2001. Both the September 2000 order denying discovery and the September 2001 order were, at that point, before the court of appeals.

In *Grand Jury II,* the court of appeals held that Black Hawk failed to establish that it suffered any prejudice due to the manner in which the grand jury was impaneled, 77 P.3d at 783–84, and also held that there was nothing improper in the way that the district attorney instructed the grand jury, 77 P.3d at 786.

The court of appeals also addressed the district court's September 22, 2000, order concerning Black Hawk's discovery requests. Relying on our decision in *Grand Jury I,* as well as our past decisions regarding the nature of the grand jury process, the court of appeals held that nothing within section 16–5–205.5 compelled the district court to authorize discovery of the grand jury record and that, given this state's strong policy in favor of grand jury secrecy, the district court properly denied discovery of the grand jury record in this case. *Grand Jury II,* 77 P.3d at 784–85.

We granted certiorari in this case solely on the issue of "[w]hether a person named in a grand jury report has a right to discovery of grand jury records under [section] 16–5–205.5." We now conclude that such a person has no right to discovery under section 16–5–205.5.

### III. Analysis

Section 16–5–205.5(1) states in relevant part that "[i]n any case in which a grand jury does not return an indictment, the grand jury may prepare or ask to be prepared a report of its findings if the grand jury determines that preparation and release of a report would be in the public interest." Subsection (3) of that statute states that

[w]ithin ten days after receiving a report of the grand jury ... the prosecuting attorney shall notify in writing all persons and businesses named in the grand jury report to give such persons and businesses an opportunity to review the grand jury report and prepare a response to be submitted to the court with the grand jury report.

Black Hawk argues that, because section 16–5–205.5 permits a named party to issue a response to the published report, the statute necessarily permits that named party to inspect the grand jury record in order to prepare the response. Black Hawk bases its assertion on two independent grounds. Black Hawk first argues that, despite the statute's silence on the issue of discovery, the automatic right to discovery of the grand jury record is necessarily implied. Black Hawk alternatively argues that federal due process similarly mandates the right of discovery under section 16–5–205.5. We disagree with both arguments.

## A. Statutory Analysis

### 1. Alleged Statutory Ambiguity

■ Black Hawk agrees that the section 16–5–205.5 is silent on the matter of discovery, but argues that such silence amounts to an ambiguity in the statute permitting us to resort to a number of different methods of statutory construction. We are not persuaded.

■ As with any statute, we endeavor to interpret the provisions of section 16–5–205.5 in strict accordance with the General Assembly's purpose and intent in enacting them. *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1152 (Colo.2001). To discern that intent, we look first to the statute's plain language. *Bd. of County Comm'rs v. Costilla County*, 88 P.3d 1188, 1193 (Colo.2004). Where the language of the statute is plain and clear, we must apply the statute as written. *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo.1996). Only where the wording in the statute is unclear and ambiguous will we resort to other modes of construction, such as relying on legislative history. *Colo. Dep't of Labor &*

*Employment v. Esser*, 30 P.3d 189, 195 (Colo. 2001).

■ Generally, an ambiguity exists in a statute only where at least one of its terms is susceptible to multiple meanings. *See Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 252–53 (Colo.1996) (superseded by statute on different grounds as stated in *United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152, 1158 (Colo.2000)). Where a statute is silent on a certain matter and that silence prevents a reasonable application of the statute, we must endeavor to interpret and apply the statute despite that silence all the while striving "to effectuate the General Assembly's intent and the beneficial purpose of the legislative measure." *In re Estate of Royal*, 826 P.2d 1236, 1238 (Colo.1992). If, however, a statute can be construed and applied as written, the legislature's silence on collateral matters is not this court's concern, *see PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995) (superseded by statute on different grounds as stated in *Colo. Springs Disposal v. Indus. Claim Appeals Office*, 58 P.3d 1061 (Colo.App.2002)), for we will not strain to construe a statute unless necessary to avoid an absurd result, *City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 590 (Colo.1997).

Black Hawk concedes that nothing within the plain language of section 16–5–205.5 requires a court to permit discovery of the grand jury record. However, it argues that section 16–5–205.5's silence on the issue creates an ambiguity necessitating a review of the statute's legislative history.

We conclude that the statute is clear on this matter and is readily applied. Section 16–5–205.5(3) simply states that all named parties to the grand jury's report shall have "an opportunity to review the grand jury report and prepare a response to be submitted to the court with the grand jury report." From this, we glean the legislature's clear intent; named parties to the report may submit a response to the report following review of the report itself. We do not doubt that permitting those parties also to review the grand jury record would allow those parties to prepare a more effective response. However, a party can feasibly rebut or take

issue with the substance of the report without inspecting all of the information that the grand jury reviewed in the process of compiling its report. Accordingly, there is no silence within the statute that would otherwise inhibit its application. Thus, the legislature's silence on this collateral matter can only mean that the district court is not required to permit discovery by those seeking to submit a response under section 16–5–205.5(3). If the General Assembly had intended for named parties to have an automatic right to inspect the grand jury record, it could easily have merely included a right to review the report *and* the underlying record. It did not do so. *See HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 894 (Colo.2002). Because we perceive no ambiguity in the language of section 16–5–205.5, we need not look beyond the plain language of the statute to apply its terms.[1]

### 2. Procedural Safeguards

Nevertheless, Black Hawk urges that discovery is intrinsically necessary to help named parties in the report fend off indiscriminate or venomous attacks. Black Hawk argues that, if we do not read into the statute an automatic right of discovery for named parties to the report, nothing will dissuade members of the grand jury from acting carelessly or even maliciously in deciding to issue a report. Instead, Black Hawk contends, named parties will be left completely exposed to the whim of the grand jury. Thus, Black Hawk insists, the obvious intent of section 16–5–205.5's corresponding report and response provisions is to afford all named parties to a report the automatic right of discovery of the grand jury record.

In *Grand Jury I,* we examined at length general questions relating to the fairness and function of section 16–5–205.5. *Grand Jury I,* 22 P.3d at 924–27. We did so in order to determine what must occur before a jury may issue a report and what the role of the district court should be in reviewing and releasing that report. We held that the grand jury in that case—the same grand jury at the center of this dispute—had jurisdiction to seek issuance of its report under section 16–5–205.5, despite the lack of an indictment, because that grand jury initially began its inquiry on the basis of suspected criminal activity, not on a whim or vendetta. *Grand Jury I,* 22 P.3d at 924–25.

We further noted that "[t]he statute has a number of procedural safeguards protecting against careless issuance of reports." *Id.* at 925–26. We explained that no report may issue unless the same number of jurors agrees to file the report as would be required to return an indictment. *Id.* at 926. We also stated that the statute requires the district court to examine the report, including the responses filed by any named parties and the certifications of public interest filed by the grand jury foreperson and the prosecuting attorney. *Id.* Based on that examination, the court must determine (1) that the grand jury and the prosecuting attorney were acting within their jurisdiction, and (2) that the report contains only matters of public interest. *Id.* at 926.

1. As a matter of statutory interpretation, Black Hawk requests that we adopt the approach taken by the New York Court of Appeals. In *In re Second Report of the November, 1968 Grand Jury,* 26 N.Y.2d 200, 309 N.Y.S.2d 297, 257 N.E.2d 859, 861 (1970), the New York Court of Appeals held that a public official named in a grand jury report issued without an indictment had a right to seek discovery of grand jury minutes for purposes of both appealing the trial court's acceptance of the report and for filing a published answer to the report. The court in that case relied upon its own state constitution and reached its decision based on past precedent concerning similar appeals and based upon a statutory scheme that appears to be quite different from our own (the court mentions no safeguards similar to those contained in section 16–

5–205.5, 6 C.R.S. (2003), and discussed in detail in *Grand Jury I,* 22 P.3d at 925–26). Because the rights at issue in this case are purely statutory—and not constitutional—and because "[t]he Colorado Constitution expressly delegates the power to regulate the grand jury to the general assembly," *id.* at 925 (citing to Colo. Const. art 2, § 23), we find the analysis adopted by the New York Court of Appeals to be inapplicable here. We especially note the factual differences between that case and the present appeal; in the New York case, the appellants were only seeking to discover grand jury minutes, 26 N.Y.2d 200, 309 N.Y.S.2d 297, 257 N.E.2d at 860–61, unlike here, where Black Hawk seeks wholesale discovery of all information that was before the grand jury.

Examining the statute's legislative history, we observed that the General Assembly intended to prohibit the district court from reviewing or inspecting the grand jury record in determining the propriety of the report. *Id.* at 926–28. The legislature was confident that the above safeguards would sufficiently protect the interests of a named party to a report such that the trial court need not delve into the grand jury record to determine the necessity or wisdom of the report's release. *See id.* at 925–28. Specifically, the court is directed to measure the statutory sufficiency of the report by reviewing only the report itself and the accompanying certifications and responses. *Id.* at 928. If the General Assembly had been wary of permitting a trial judge to sift through the grand jury record, surely it would be opposed to permitting a party named in the report to do the same.[2]

### 3. Policy Concerns

Black Hawk additionally argues that larger notions of fairness require us to imply the right of discovery from section 16–5–205.5. Specifically, it contends that the provision within section 16–5–205.5 permitting a named party to issue a response is rendered meaningless without a corresponding right to discover the grand jury record. If the purpose of the response provision was to bring fairness to the report procedure, Black Hawk insists that fairness requires a named party to the report to see all of the information the grand jury had before it.

In *Grand Jury I*, we held that both the plain language of section 16–5–205.5 and the statute's legislative history revealed the legislature's intent in permitting a report to be issued on the one hand, but in preventing the court's inquiry into the grand jury record on the other. We stated that section 16–5–205.5 balanced the need to keep grand jury proceedings secret while allowing the grand jury to inform the public "about 'government actions that fall short of criminal activity, but are nonetheless not good government.' " *Id.* at 927 (quoting Hearing on HB 97–1009 before Senate Judiciary Comm., 61st General Assembly, 1st Sess. (Jan. 21, 1997) (statement of Bill Ritter, Jr., District Attorney for Second Judicial District)). The statute was thus designed to allow reports issued in the public interest to go forward without a court's second-guessing the facts. *Id.* at 926.

*Grand Jury I*, of course, did not specifically address the matter before us now—namely, whether section 16–5–205.5 permits discovery of the grand jury record by a named party to the report. However, we did

---

**2.** The court of appeals appears to have implied an exception to its holding in this case when it indicated that "members of the public generally have a right of access to ministerial court records" and that "[a]n instructive standard in categorizing a record as ministerial is whether the disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations." *Grand Jury II*, 77 P.3d at 784. In describing this exception, the court of appeals was prompted by the first of Black Hawk's justifications in seeking discovery of the grand jury record—that the information was necessary to file an objection to the lawfulness of the grand jury's impanelment. *Id.* The court intimated that records necessary to object to the grand jury's jurisdiction may fall under this ministerial exception. *See id.* In this case, however, the district attorney voluntarily gave Black Hawk two items that it sought in its discovery motion—items that apparently provided Black Hawk with enough information to object to the impanelment of the grand jury. Those items consisted of the district attorney's initial petition for impanelment and the district court order granting that request. These two items are the only pieces of information that make up the record of the chief judge's decision to convene the grand jury. *See* § 13–74–101, 5 C.R.S. (2003). There is no specific statutory right to this information and no specific mechanism by which a named party to a grand jury report requests such information. However, the particularized need to object to the grand jury's jurisdiction in seeking the motion for impanelment and the order granting that request will, in most cases, far outweigh any detrimental effect upon the grand jury's secrecy. The decision to permit discovery of additional information that relates to the process by which the grand jury was selected rests within the sound discretion of the chief judge of the court that presides over the grand jury. § 13–74–103, 5 C.R.S. (2003) ("The chief judge may close to the public part or all of the selection process when reasonably necessary to protect the grand jury process or the security of the grand jurors."); *see also People v. Dist. Court*, 199 Colo. 398, 401, 610 P.2d 490, 492 (1980) ("[T]he liberal discovery rights which have been granted to a defendant in Colorado do not guarantee automatic access to everything that transpires before the grand jury."). To this extent, we limit the application of the court of appeals' ministerial records exception.

there detail the history surrounding the enactment of section 16–5–205.5. That history reveals that the statute's drafters contemplated both the dangers and benefits that inhere in releasing a grand jury report where no indictment issues. The statute plainly represents a balancing of all competing interests,[3] and it does not fall to this court to second-guess that balance.

## B. Due Process Concerns

■ Black Hawk alternatively argues that we are bound by federal due process to interpret section 16–5–205.5 to permit discovery by a named party to a grand jury report. Black Hawk claims that due process mandates that all named persons to a grand jury report have access to the grand jury record in order to mount an effective evidence-based response to the report's findings. Such an assurance, Black Hawk contends, is necessary to protect a named party's reputation.

■ In order to trigger a due process analysis, however, a party must first demonstrate that a cognizable life, liberty, or property interest is affected by the government action at issue. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The United States Supreme Court has held that stigma or damage to one's reputation is not a recognized liberty or property interest for purposes of due process unless the stigma allegedly caused by the government is accompanied by some other form of tangible deprivation by the same government body, such as the loss of employment. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Here, Black Hawk alleges that the grand jury, through its report, is attempting to stigmatize or defame the reputation of the individuals named in the report. Black Hawk does not allege that by virtue of the alleged stigma, the grand jury will then deprive these individuals of an additional tangible life, liberty, or property interest; the stigma is the only harm claimed. Accordingly, Black Hawk has failed to demonstrate that section 16–5–205.5 affects a cognizable due process interest and, thus, federal due process concerns are not implicated here.

## IV. Conclusion

In summary, we conclude that a party named in a grand jury report has no right under section 16–5–205.5 to discover information in the grand jury record. Neither the language of that statute nor principles of procedural due process command otherwise. Accordingly, we affirm the decision of the court of appeals.

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice MARTINEZ, dissenting.

The ability of parties named in a grand jury report to respond sufficiently to the report varies depending on the nature and amount of information in the report. In some cases, parties may not need to look beyond a grand jury report to respond to the points raised in the report. When a grand jury report details the evidence underlying its conclusions, the report may equip named parties with sufficient information to respond. However, in other cases, named par-

**3.** The tradition of grand jury secrecy has long been recognized by this court. *See Granbery v. Dist. Court,* 187 Colo. 316, 320, 531 P.2d 390, 392 (1975); *see also* Crim. P. 6.2(a) ("All persons associated with a grand jury and its investigations or functions should at all times be aware that a grand jury is an investigative body, the proceedings of which shall be secret."). That secrecy has been maintained for several reasons. Those reasons include the motivation to "insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors" and "to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes." *Granbery,* 187 Colo. at 321, 531 P.2d at 393. While our past cases have indicated that a party seeking particular information may overcome the shroud of secrecy surrounding grand jury records, we have held that, in general, the need must be particular and compelling; wholesale discovery is never permitted and the decision to grant disclosure rests within the discretion of the trial court. *Id.* at 320, 531 P.2d at 392 (reciting the minimum standard as set forth by the United States Supreme Court but noting that in Colorado "there is discretion in a trial court to order disclosure in additional situations where a showing of particularized need has not been made.")

ties may require more information than that provided in a grand jury report. Thus, when a report fails to specify the evidence underlying its conclusions, parties may need more information to respond adequately to the report.

I am concerned with the latter situation in which a named party lacks enough information to prepare a comprehensive response to a grand jury's findings. To the extent that the majority holds that parties named in a grand jury report are not automatically entitled to wholesale discovery of the grand jury record, I agree. However, I dissent to the majority's opinion because section 16–5–205.5, 6 C.R.S. (2003) cannot be reasonably interpreted to deprive parties named in a grand jury report from obtaining enough information regarding the grand jury's findings to respond sufficiently.

I consider the opportunity for a party named in a grand jury report to respond to that report, provided in section 16–5–205.5, in the context of the case law and statutory law in existence at the time of the enactment. After discussing grand jury secrecy generally, I reiterate the principle that secrecy will not be maintained solely for the sake of secrecy. I next consider the concerns of the General Assembly in 1977 for protecting witnesses and the subsequent continuing interest in protecting witnesses when the General Assembly permitted the release of certain grand jury reports. Because concerns for secrecy must be weighed against named parties' interest in information necessary to exercise its right to respond adequately to a grand jury report, I would remand this case to the district court for such a determination.

Accordingly, to determine whether the named parties here may access grand jury materials, I would have the district court consider whether protecting the release of materials serves the purposes of grand jury secrecy. The court should next evaluate the parties' ability to formulate sufficient responses to the grand jury report based on the information contained in the report to determine the need for additional information, as well as the relevancy and usefulness of the requested materials. Finally, the court should weigh the remaining interest in grand jury secrecy against the named parties' need for particular information.

This court has previously held that it will only protect the secrecy of grand jury proceedings to the extent the purposes of secrecy are served. *Granbery v. Dist. Court,* 187 Colo. 316, 320–22, 531 P.2d 390, 393 (Colo. 1975). Generally, courts have cited five reasons to keep grand jury proceedings secret. First, secrecy prevents the escape of those that the grand jury may indict. *Id.* at 321, 531 P.2d at 393 (quoting *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). Second, secrecy allows the grand jury to deliberate freely without the threat of influence or harassment by those subject to indictment. *Id.* Third, secrecy prevents perjury or tampering of witnesses testifying either before the grand jury or at trial. *Id.* Fourth, secrecy encourages people with information regarding the commission of crimes to come forth and disclose such information. *Id.* Finally, secrecy protects an individual exonerated after a grand jury investigation from the disclosure that they were the subject of such an investigation. *Id.*

In *Granbery,* this court examined these purposes, concluded that they were not furthered when documents procured for use in a grand jury investigation were withheld, and allowed disclosure of the documents. *Id.* at 322, 531 P.2d at 393–94. Documents procured for use in a grand jury investigation, some of which were introduced as exhibits before the grand jury, were sought for use in an administrative hearing. *Id.* at 318–20, 531 P.2d at 392. In beginning its analysis, the court explained that disclosure of grand jury secrecy "must be done discreetly and limitedly, and only when a compelling need outweighs the countervailing policy of secrecy." *Id.* at 320, 531 P.2d at 392. The court then emphasized that the policies behind grand jury secrecy may be secondary to other interests, stating that "secrecy for secrecy's sake should no longer be the rule in Colorado. Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded upon sound reason." *Id.* at 320, 531 P.2d at 393. Applying these principles to the case before it, the court reasoned that

secrecy concerns were not promoted because the documents in question were sought for reasons independent from their use in the grand jury proceedings. *Id.* at 322, 531 P.2d at 393–94.

Thus, in *Granbery*, this court made clear that the disclosure of grand jury materials will be prevented only when withholding those materials promotes the policies of secrecy. In my opinion, the court should apply the rule of *Granbery* and ask whether the purposes of secrecy are promoted by withholding grand jury records from parties named in the grand jury report. As this court stated in *Granbery*, courts should not enforce secrecy when the purposes of secrecy are not furthered.

Often, courts may find that many of the purposes of grand jury secrecy will not be served by preventing the release of materials to parties named in the grand jury report. By the time that parties named in a grand jury report are notified of the report, grand jury proceedings have ceased and the grand jury has decided not to issue an indictment. Thus, many of the reasons for maintaining secrecy cited in *Granbery* will evaporate. For example, after grand juries conclude investigations, no need exists "to insure the utmost freedom to the grand jury in its deliberations" or "to prevent persons subject to indictment or their friends from importuning the grand jurors." *Id.* at 321, 531 P.2d at 393. Similarly, preventing the escape of those whose indictment may be contemplated is no longer a concern. *See id.* Moreover, after conclusion of grand jury deliberations, the subordination of perjury is not a danger. *See id.* However, some concerns of grand jury secrecy remain after grand juries end their deliberations. For example, courts must evaluate whether disclosure would further the purpose of "encourag[ing] free and untrammeled disclosures by persons who have information with respect to the commissions of crimes." *Id.* Thus, courts must examine whether furtherance of this purpose prevents disclosure.

Notably, in some cases, withholding grand jury materials from parties named in a grand jury report may actually thwart an objective of grand jury secrecy. The secrecy of grand jury proceedings functions "to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation...." *Id.* When a published grand jury report discloses the names of individuals under investigation, the individuals' identities are no longer shielded from the public. Thus, the purpose of keeping the names of individuals subject to investigation is defeated.

The policy of upholding grand jury secrecy only when it furthers the purposes of secrecy is consistent with actions of the General Assembly. By enacting the grand jury statutes, the General Assembly has conceded that the interests of secrecy in grand jury proceedings must, at times, bow to other interests. For example, the General Assembly has pierced grand jury secrecy by allowing witnesses to have counsel present. *See* § 16–5–204(4)(d), 6 C.R.S (2003). Similarly, the General Assembly has allowed the release of the grand jury report to the public. *See* § 16–5–205.5. In addition, this court has acknowledged the General Assembly's concession that the secrecy of grand jury proceedings must be secondary to other concerns, noting that "the secrecy provision of the grand jury should not always be such that the public is kept in the blind." *In re 2000–2001 District Grand Jury in and for the First Judicial District Concerning the Grand Jury Report on the Proland Annexation,* ("*Grand Jury I*"), 22 P.3d 922, 927 n. 7 (Colo.2001) (quoting *A Bill for an Act Concerning Release of Grand Jury Reports in Which No Indictment is Returned: Hearing on HB 97–1009 before Senate Judiciary Comm.,* 61st Gen. Assemb., 1st Sess. (Feb. 18, 1997) (statement of Bill Ritter, Jr., District Attorney for the Second Judicial District)). Thus, the General Assembly has not viewed the secrecy of grand jury proceedings as a superceding interest.[1] The rule of

---

1. The majority points to the district court's limited role, as explained in *Grand Jury I*, to support its argument that the General Assembly did not intend that named parties would be able to inquire into the grand jury record. The majority essentially contends that if the trial court cannot examine the grand jury record, neither can parties named in the report. First, I dissented from

*Granbery* is therefore consistent with the General Assembly's view that grand jury secrecy is necessary to the extent it furthers policy purposes.

Though few justifications may remain for keeping grand jury proceedings secret, courts should, consistent with *Granbery*, ask whether withholding materials from parties named in a grand jury report furthers the reasons for secrecy in grand jury proceedings. However, to determine whether grand jury materials should be disclosed to named parties when the purposes for keeping those materials secret may have little or no remaining validity, I next look to the statutory provisions concerning grand jury secrecy and the release of grand jury reports.

Concern arose in the 1970s after a grand jury report criticized county officials in Arapahoe County. *A Bill for an Act Concerning Grand Juries: Hearing on SB 77–186 before House Judiciary Comm.*, 51st Gen. Assemb., 1st Sess. (Apr. 13, 1977) (statements of Senator Ray Kogovsek) ("[A]t least in my opinion, had the incident not happened, . . . we wouldn't be discussing how grand jury reports should be handled."). The incident prompted the General Assembly to reform the grand jury reporting process out of fairness to the county officials who were criticized. Dale Tooley, then the Denver District Attorney, described that the release of the report criticizing the county officials was "unfair" because the officials "literally had no chance to defend themselves, to reply, except to the press." *Id.* (statements of Dale Tooley). Senator Ray Kogovsek echoed Tooley, noting that the county officials "felt that they didn't have their day in court" and that they "were left holding the bag." *Id.* (statements of Senator Kogovsek).

The protective measures subsequently enacted offer unique procedural safeguards designed to prevent grand jury abuses. *See* §§ 16–5–204, –205.5. For example, the General Assembly granted witnesses called before grand juries the right to have counsel present in the grand jury room. *See* § 16–5–204(4)(d). Implementation of these safeguards grew from attitudes that our state's grand jury system had become a "powerful instrument of persecution controlled and directed by the very overzealous and politically motivated prosecutors the grand jury was originally intended to check." *A Bill for an Act Concerning Grand Juries: Hearing on SB 77–186 before Senate Judiciary Comm.*, 51st Gen. Assemb., 1st Sess. (Feb. 16, 1977) (statement of Emily Hixon, Coalition to End Grand Jury Abuse).

In 1997, section 16–5–205.5 was enacted to permit the release of certain grand jury reports but with an attempt to guarantee that individuals were not publicly criticized without an opportunity to defend themselves, reflecting the broader protective nature of Colorado grand jury laws. Interpreting section 16–5–205.5 as creating an opportunity for named parties to respond sufficiently to a grand jury report avoids the due process problems that arise from the majority's construction of the section. As the majority correctly asserts, mere publication of a grand jury report that criticizes reputations does not run afoul of due process because personal reputations are not protected property rights. *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, due process violations may occur if a report criticizing an individual is published and also results in "tangible injury such as termination of employment." 1 Sara Sun Beale et al., *Grand Jury Law & Practice* § 2:4 (2d ed. 2002). When the grand jury report causes loss of a protected property interest, a due process violation may arise unless the affected party had notice of the allegations against him and an opportunity to refute them. *Id.; see also Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therefore, allowing parties sufficient opportunity to respond avoids subsequent due process issues.

When interpreting section 16–5–205.5, we can conclude that the General Assembly in-

the majority decision in *Grand Jury I. See Grand Jury I*, 22 P.3d at 929–33. Second, I note that different concerns surround the trial court's role in grand jury reports and named parties. Limits on grand jury reporting were enacted to protect parties subject to investigation. Trial courts' limited roles in monitoring the publication of reports and their content creates greater reasons to allow named parties to publish meaningful responses in their defense.

tended to allow parties named in a grand jury report to respond sufficiently when viewed against the context in which the statute was passed, the protective purposes it was intended to serve, the due process dangers that an alternate construction created, and this court's case law. Because the statute was part of a larger statutory scheme designed to prevent grand jury abuses and was passed to protect individuals from public criticism without opportunities to defend themselves, we can infer that the General Assembly intended to confer a substantive right onto individuals named in a grand jury report to respond to criticism. Additionally, we can assume the General Assembly aimed to enact a statute that comported with due process. *See, e.g., Meyer v. Lamm,* 846 P.2d 862, 876 (Colo.1993) ("The presumption of constitutionality accorded all statutes also assumes that the legislative body intends the statutes it adopts to be compatible with constitutional standards."). More importantly, we can assume that the General Assembly was aware of our past judicial decisions. *See, e.g., State Engineer v. Castle Meadows, Inc.,* 856 P.2d 496, 504 (Colo.1993). Specifically, in *Granbery,* we articulated that we would only preserve the secrecy of grand jury proceedings as long as the purposes of secrecy were furthered. *Granbery,* 187 Colo. at 320, 531 P.2d at 393. Therefore, in my view, section 16–5–205.5 allows parties named in grand jury proceedings to access grand jury materials to the extent that the purposes of grand jury secrecy are no longer served and to the extent that the accessed materials are necessary and relevant to construct a sufficient response. Thus, courts must next determine whether the grand jury report provides enough information to allow named parties to respond sufficiently.

When a grand jury report adequately informs named parties of the grounds for the conclusions, courts may conclude that disclosure of grand jury materials is not necessary. However, when the report lacks explanation, disclosure is necessary to allow parties to respond. Preventing parties from crafting sufficient responses is concerning because a report that criticizes an individual's behavior may damage their reputation. Additionally, the broad evidentiary bases for allegations

prevent parties from narrowing or tailoring their responses.

The inability of named parties to respond sufficiently to a grand jury report becomes particularly troubling when the report criticizes an individual's behavior or suggests wrongdoing. Such allegations may affect an individual's reputation and character because "[i]n the public mind, accusation by report is indistinguishable from accusation by indictment." *Wood v. Hughes,* 9 N.Y.2d 144, 212 N.Y.S.2d 33, 173 N.E.2d 21, 26 (1961). Because a report "subjects those against whom it is directed to the same public condemnation and opprobrium as if they had been indicted," it can be "at once an accusation and a final condemnation." *Id.*

Additionally, the bases for the criticism may be broad and thus difficult to refute by the parties. Grand juries consider a broader range of evidence than that in a jury trial because fewer rules apply that can exclude evidence. *See United States v. Calandra,* 414 U.S. 338, 354–55, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (grand jury witness not permitted to invoke exclusionary rule in refusing to answer questions based on evidence obtained from unlawful search and seizure); *Losavio v. Robb,* 195 Colo. 533, 536, 579 P.2d 1152, 1154 (1978) ("[T]he grand jury is given broad investigatory powers and is entitled to subpoena all evidence necessary for its deliberations." (internal quotes and citation omitted)); *People v. Wilkinson,* 37 Colo.App. 531, 533, 555 P.2d 1167, 1169 (1976) (stating that grand juries allow "laymen ... to conduct their inquiries unrestricted by the technical rules of evidence"). As a result, a report may be based "upon the grand jury's own criteria of public or private morals" and "charge[] the violation of subjective and unexpressed standards of morality." *Wood,* 212 N.Y.S.2d 33, 173 N.E.2d at 26. Thus, because grand juries have broad evidence on which to base allegations, named parties unaware of additional inconsistent evidence may not be able to generate persuasive rebuttals.

By conferring to parties the right to respond to a grand jury report, section 16–5–205.5 implicitly entitles named parties to

enough information to respond to the report. Without such information, the statutory right lacks substance because parties are limited to responding with little more than "I disagree."

In this case, the majority was correct to deny the City of Blackhawk wholesale discovery of the entire grand jury record. However, I would have remanded the case to the district court to determine the extent to which the purposes of grand jury secrecy continue to be served by withholding the materials. The court should then determine whether the City had enough information, either in the grand jury report itself or in the materials it received from the district attorney, to respond sufficiently to the grand jury report. If the trial court determines that the City lacked enough information to respond sufficiently to the report, the trial court should next evaluate the information requested and determine which portions of the grand jury materials would be relevant to the City's response. Finally, the court should weigh the remaining interests in grand jury secrecy against the named parties' need for information and thus decide what information, if any, should be released to the named parties.

For these reasons, I do not agree with the majority's resolution of this case. Accordingly, I respectfully dissent.

I am authorized to state that Justice BENDER joins in this dissent.

