**In re 2003–2004 TERM OF the STATE GRAND JURY, and Concerning the Attorney General of the State of Colorado, Appellant.**

No. 04CA2351.

Colorado Court of Appeals, Div. III.

Oct. 19, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

John W. Suthers, Attorney General, Brian R. Whitney, Assistant Attorney General, Denver, Colorado, for Appellant.

Perkins Coie, L.L.P., Robert N. Miller, Denver, Colorado; Hogan & Hartson, L.L.P., Thomas L. Strickland, Andrew R. Shoemaker, Denver, Colorado, for Interested Party.

John R. Rodman & Associates, John R. Rodman, Denver, Colorado, for Interested Party.

Opinion by Judge FURMAN.

The Attorney General of the State of Colorado appeals the trial court's order denying the release of a state grand jury report pursuant to § 16–5–205.5, C.R.S.2006. We affirm.

## I. Background

The 2003–2004 State Grand Jury was convened in May 2003 to investigate matters of statewide concern.

On February 27, 2004, Governor Bill Owens issued an executive order asking the Attorney General to

conduct a comprehensive investigation of issues and allegations of sexual offenses and other matters concerning the University of Colorado and its football team and recruiting practices. If evidence warrants and if deemed to be in the public interest, the Attorney General may pursue prosecution of such matters, consistent with state law.

In response, the Attorney General assembled a task force that investigated certain allegations, released findings, and then brought the remainder of the investigation to the state grand jury.

This grand jury was charged with investigating allegations surrounding the University's football program, including recruiting practices, financial transactions of the football team and associated entities, and whether a member of the University's athletic department provided prostitutes to football recruits.

On August 19, 2004, the state grand jury issued an indictment against former University of Colorado football recruiting aide Nathan Maxcey, alleging that he solicited prostitution and embezzled public property by using a University-owned cellular telephone to make several hundred dollars worth of personal calls. The grand jury also filed with the trial court a report detailing its findings.

The trial court, however, declined to authorize release of the grand jury report, concluding that "a report can only be issued when a grand jury does not return an indictment from an investigation" and, because

"the grand jury report grew out of the same investigation which resulted in the indictment of Nathan Maxcey," § 16–5–205.5 prohibited its release.

The Attorney General filed a motion for reconsideration, contending that the investigation which resulted in the report was different and separate from the investigation which resulted in the indictment.

After reviewing events leading up to the Maxcey indictment, including pleadings not under seal and the Governor's executive order, the trial court in a detailed order found that the grand jury had undertaken a single "comprehensive" investigation and denied the motion for reconsideration. This appeal followed.

In this court, the Attorney General filed a motion to supplement the record on appeal to include the grand jury transcripts, particularly those related to Maxcey. We denied this request.

Our review is limited to the statewide grand jury report and records not under seal. We do not rely upon sealed records or transcripts. *In re 2000–2001 Dist. Grand Jury,* 22 P.3d 922, 926 (Colo.2001) (*Grand Jury I*).

### II.   Grand Jury Report

The Attorney General contends that the trial court erred by declining to authorize the release of the grand jury report. We disagree.

### A.   Grand Jury Powers

██ The grand jury has broad powers as an investigative and accusatory body to "ferret out criminal activity." *Gher v. Dist. Court,* 183 Colo. 316, 319, 516 P.2d 643, 644 (1973); *see* § 16–5–204(3)(a), C.R.S.2006. Especially in cases where public concern is great, it is desirable to have the grand jury serve in the investigative role. *Losavio v. Kikel,* 187 Colo. 148, 529 P.2d 306 (1974).

██ At the conclusion of its investigation, the grand jury has the power to indict. Crim. P. 6.2(a). However, when it decides not to indict, the grand jury has no function but to issue an appropriate legally sanctioned report, or to maintain secrecy. Crim. P. 6.2(a); *see In re Grand Jury Proceedings,* 813 F.Supp. 1451, 1463 (D.Colo.1992).

██ Secrecy serves to check the power of the grand jury by protecting citizens against unfounded accusations of criminal misconduct that cannot be answered in an authoritative forum. *See In re United Elec. Radio, & Mach. Workers,* 111 F.Supp. 858, 867 (S.D.N.Y.1953). The rule of secrecy is "as important for the protection of the innocent as for the pursuit of the guilty." *United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983) (quoting *United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)).

██ This strict grand juror "secrecy rule" continues until an indictment is made public, if an indictment is returned, or until a grand jury report dealing with the investigation is issued and made public as provided by law. Crim. P. 6.2(a). A grand jury report may be issued and made public only under the limited circumstances defined in § 16–5–205.5. Crim. P. 6.7.

Section 16–5–205.5 provides, in pertinent part:

(1) *In any case in which a grand jury does not return an indictment,* the grand jury may prepare or ask to be prepared a report of its findings if the grand jury determines that preparation and release of a report would be in the public interest, as described in subsection (5) of this section. The determination to prepare and release a report pursuant to this section must be made by an affirmative vote of at least the number of jurors that would have been required to return an indictment. The report shall be accompanied by certification that the grand jury has determined that release of the report is in the public interest, as described in subsection (5) of this section.

(2) The provisions of this section shall not apply in any instance in which the prosecuting attorney chooses to file charges against the person or business

that was the subject of the grand jury investigation.

(Emphasis added.)

■ Trial courts exercise supervisory responsibility over the grand jury and also serve as a check on its power. Section 13–73–105, C.R.S.2006, provides: "[j]udicial supervision of the state grand jury shall be maintained by the chief judge who issued the order impaneling such grand jury, and all indictments, reports, and other formal returns of any kind made by such grand jury shall be returned to that judge." *See Gher v. Dist. Court, supra,* 183 Colo. at 319, 516 P.2d at 644–45 (where the broad powers of a grand jury are used for purposes apart from their statutory mandates, the courts must intervene to prevent a gross abuse of the judicial process).

One example of the court's supervisory responsibilities over the grand jury is to ensure that the grand jury report does not arise out of any "case" where the grand jury returns an indictment. *See Grand Jury I, supra,* 22 P.3d at 923 ("[w]hen it chose not to issue an indictment, the grand jury had the discretion to seek to release a report under the Grand Jury Reports statute").

### B. Defining the "Case" in Controversy

■ The Attorney General contends that the trial court erred in equating the term "case" under § 16–5–205.5 to a grand jury "investigation." He points to the trial court's decision not to release the grand jury report on its determination that the report grew out of the same "investigation" which resulted in the indictment against Maxcey. He contends the General Assembly's separate use of "case" and "investigation" in the statute evidences a legislative intent that they are not synonymous. We disagree.

The primary task in construing a statute is to interpret statutory provisions in accordance with the General Assembly's purpose and intent in enacting them. *See In re 2000–2001 Dist. Grand Jury,* 97 P.3d 921, 922 (Colo.2004) (*Grand Jury II*). To discern that intent, we rely on the language of the statute and give the words used their plain and ordinary meaning. Section 2–4–101,

C.R.S.2006; *see also In re Title, Ballot Title & Submission Clause,* 961 P.2d 1077, 1079 (Colo.1998) (when legislative language is unambiguous, court must give effect to the plain and ordinary meaning of the statute).

Section 16–5–205.5(1) is unambiguous. By its plain terms, a report may be prepared for release in any "case" where the grand jury does not return an indictment.

Although the term "case" is not defined in the statute or in the Rules of Criminal Procedure, it is commonly defined as "(1) a situation requiring investigation or action (as by the police); or (2) the object of investigation or consideration." *Webster's New Collegiate Dictionary* 170 (1981).

A grand jury in a particular "case" is asked to investigate facts that may lead to allegations of misconduct, provided its investigation is limited to a particular subject matter. *See* § 16–5–204(3)(e), C.R.S.2006; *Grand Jury I, supra,* 22 P.3d at 923. In the course of investigating this subject matter, a grand jury may inquire into additional facts that lead to other allegations of misconduct. Thus, the term "case" in the grand jury statute means any matter that has become the object of investigation arising out of the original subject matter of inquiry. *See People v. Prior,* 268 A.D. 717, 721, 54 N.Y.S.2d 150, 154 (reference to "case" in grand jury proceeding means any matter that might become the subject of inquiry), *aff'd,* 294 N.Y. 405, 63 N.E.2d 8 (1945). The supreme court has used the terms "case" and "investigation" interchangeably in this context. *See Grand Jury II, supra,* 97 P.3d at 922.

Accordingly, the trial court did not err in equating the term "case" under § 16–5–205.5 to the grand jury's "investigation" when it determined that the report grew out of the same investigation which resulted in the indictment against Maxcey.

### C. One Investigation or Two?

Nonetheless, the Attorney General contends that the grand jury's investigation leading to its report constituted a related, but different, investigation from the "case" involving the Maxcey indictment. The Attorney General points to the grand jury's report

which stated that it had undertaken two separate, but related, investigations. The Attorney General contends that (1) this finding by the grand jury was binding on the trial court and, (2) it was error for the trial court to consider any other evidence. We disagree.

■ Determining whether the grand jury complied with the requirements of § 16–5–205.5 and whether there was a single investigation or case constitutes a gatekeeping function properly carried out by the trial court in its supervisory role over grand juries. *See* §§ 13–73–105; 16–5–205.5; *Grand Jury I, supra,* 22 P.3d at 926. The court's determination is a mixed question of law and fact. We review de novo the court's application of the governing statutory standards. *See Grand Jury II, supra,* 97 P.3d at 924–25. We disturb the trial court's findings of fact only if they are clearly erroneous and not supported by the record. *See Grand Jury I, supra,* 22 P.3d at 928.

### 1. Grand Jury Finding

■ Section 16–5–205.5(1), C.R.S.2006, requires the grand jury to determine that "preparation and release of the report would be in the public interest." Section 16–5–205.5(5), C.R.S.2006, provides:

: Release of a grand jury report pursuant to this section may be deemed to be in the public interest only if the report addresses one or more of the following:

(a) Allegations of the misuse or misapplication of public funds;

(b) Allegations of abuse of authority by a public servant, as defined in section 18–1–901(3)(*o*), C.R.S., or a peace officer, as described in section 16–2.5–101;

(c) Allegations of misfeasance or malfeasance with regard to a governmental function, as defined in section 18–1–901(3)(j), C.R.S.;

(d) Allegations of commission of a class 1, class 2, or class 3 felony.

Nowhere does this statute direct the court to accept the grand jury's own interpretation of its mandate. Moreover, allowing the grand jury to make assertions that would, in essence, confer authority upon itself to release a report in a case where it also returns an indictment would give the grand jury unlimited power and interfere with the supervisory and gatekeeping responsibility conferred upon the courts by the General Assembly. *See* §§ 13–73–105, 16–5–205.5(4), C.R.S.2006. Accordingly, the trial court was not bound by the grand jury's finding that it had undertaken two separate, but related, investigations.

### 2. Consideration of Other Evidence

■ The Attorney General also contends that it was error for the trial court to consider evidence apart from the grand jury report. Again, we disagree.

Section 16–5–205.5(4) provides that the court "shall examine the [grand jury] report" before entering an order accepting and filing the report. However, the supreme court has recognized that trial courts may properly rely on additional records in assessing whether the grand jury operated within its statutory authority. *See Grand Jury II, supra,* 97 P.3d at 925, 926 n. 2 (trial court has authority to consider petition for impanelment of grand jury, order granting petition, and grand jury report, including responses filed by the parties, to determine whether grand jury and prosecutor exceeded their jurisdiction); *Gher v. Dist. Court, supra* (court reviewed record, admission, and pleadings to assess whether the grand jury abused its statutory powers).

Because the issuance of an indictment by the grand jury or the filing of an information by the prosecuting attorney precludes the preparation-or release—of a grand jury report, those documents must also be reviewed so the court can determine whether there was compliance with subsections (1) and (2) of § 16–5–205.5.

Here, we conclude the trial court properly considered the grand jury report, the parties' responses to the report including the Governor's executive order, the Maxcey indictment, and the Attorney General's May 2004 motion to extend the term of the 2003–2004 Grand Jury (not filed under seal). The trial court did not review the grand jury transcripts, facts or evidence relied upon by the grand jury, or any other pleadings under seal. *See Grand Jury I, supra,* 22 P.3d at 926. Accordingly, we perceive no error by the trial court.

### 3. Evidentiary support

After finding that the grand jury had undertaken a single comprehensive investigation that led to an indictment, the trial court determined that § 16–5–205.5 prohibited release of the grand jury report. We conclude this determination is supported by the record for several reasons.

First, the Governor's executive order initiating the grand jury investigation provided for a single "comprehensive" investigation that included "issues and allegations of sexual offenses and other matters concerning the University of Colorado and its football team and recruiting practices."

Second, because the grand jury was investigating allegations surrounding the University's football program, including recruiting practices, this "case" encompassed allegations included in the indictment that former University of Colorado football recruiting aide Maxcey solicited prostitution and embezzled public property.

Finally, in a motion seeking to extend the term of the grand jury, the Attorney General expressly asserted that there "exists one investigation by the State Grand Jury" that "involves an investigation to which the Governor has appointed the Attorney General as a Special prosecutor."

Under these circumstances, we conclude the trial court did not err in determining that (1) the Maxcey indictment and the grand jury report arose out of the same "case"; and (2) because the grand jury had issued an indictment in the case, § 16–5–205.5 prohibited release of the grand jury report.

In light of our conclusions, we do not address the parties' remaining contentions.

The order is affirmed.

TAUBMAN and STERNBERG *, JJ., concur.