217 P.3d 1257 (2007)
AMERICAN NATIONAL GENERAL INSURANCE COMPANY, Colorado Certificate of Authority No. 1885, Respondent-Appellant,
v.
David F. RIVERA, Commissioner of Insurance, and Colorado Division of Insurance, Appellees.
No. 06CA0381.
Colorado Court of Appeals, Div. III.
October 18, 2007.
Certiorari Denied February 25, 2008.
*1258 Pryor Johnson Carney Karr Nixon, P.C., Elizabeth C. Moran, Greenwood Village, Colorado, for Respondent-Appellant.
John W. Suthers, Attorney General, Roxane D. Baca, Assistant Attorney General, Denver, Colorado, for Appellees.
Opinion by Judge NIETO.[*]
American National General Insurance Company (insurer) appeals from a final agency order entered by the Commissioner of Insurance, David F. Rivera, finding that certain exclusions in the collision coverage of an automobile insurance policy issued by insurer *1259 were in violation of Colorado insurance law. We affirm.
This action arises under the former Colorado Auto Accident Reparations Act (No-Fault Act), Colo. Sess. Laws 1992, ch. 219, § 10-4-710(3) at 1780 (requiring insurers to offer collision coverage), and Colo. Sess Laws. 1973, ch. 94, § 13-25-3(7) at 335 (later codified as § 10-4-703(6) )(defining "insured"). All citations here to Colorado Revised Statutes title 10, article 4, part 7 refer to the statutes as they existed before their repeal effective July 1, 2003.
In 2001, insurer issued an automobile insurance policy to its insured that contained collision coverage. Under that policy, the policyholder was the only named insured.
On February 23, 2003, with permission from the named insured, a friend who lived with him borrowed the covered car. As the friend was driving the car, it skidded on ice and went into a ditch. It is undisputed that the friend had been living at the named insured's residence since 2000, she was not listed as a driver on the policy declarations, and she was driving the car with the named insured's permission. The cost to repair the damage to the car was $9,179.36.
The named insured promptly notified insurer of the accident, but his claim was denied based on a policy provision that read, as pertinent here:
COVERAGE ECOLLISION
We will pay for loss to your insured car caused by collision between it and another object or its upset, less any applicable deductibles.
. . . .
ADDITIONAL RESTRICTIONS APPLYING TO COVERAGE ECOLLISION ONLY

We will not pay for loss to your insured car caused by collision if the operator of your insured car is a licensed driver who resides with you and is not listed on the Declarations as a driver. This restriction shall not apply if you notify us within 90 days after the date the driver becomes licensed or begins living with you.
(Original emphasis omitted and emphasis added.)
The named insured then filed a complaint with the Division of Insurance, which, in turn, requested an explanation from insurer as to why it failed to cover a permissive user of the car. Insurer responded that because the named insured failed to notify insurer that the driver resided with him, the collision restriction precluded coverage.
The Division filed a notice of charges against insurer, alleging, in pertinent part, that the collision restriction was impermissible under the No-Fault Act. Insurer countered that (1) the definition of "insured" under § 10-4-703(6) should not apply; and (2) because collision coverage was not statutorily mandated, the collision restriction was merely a matter of contract to be evaluated under contract principles. The charges went to a hearing before an administrative law judge (ALJ).
The ALJ issued a written final decision concluding that (1) the definition of "insured" in § 10-4-703(6) applied to all coverages, including collision coverage; (2) § 10-4-710(3) did not limit the definition of "insured"; and (3) insurer's collision restriction was invalid because it attempted to restrict the statutory definition of "insured" in the No-Fault Act.
The Commissioner adopted the findings of fact and conclusions of law of the ALJ, concluding that the collision coverage restriction was in violation of the No-Fault Act.
This appeal followed.

I. Standard of Review
When reviewing final agency actions, we must examine the record in the light most favorable to the agency decision. Whether the record contains substantial evidence to support the agency decision is a question of law. Rigmaiden v. Colo. Dep't of Health Care Policy & Fin., 155 P.3d 498, 501 (Colo.App.2006). We review an agency's statutory interpretation do novo, but we give deference to its interpretation of a statute it is charged with administering. We generally accept that interpretation if it has a reasonable basis in law and is warranted by the record. Colo. Dep't of Revenue v. Hibbs, 122 *1260 P.3d 999, 1002 (Colo.2005); Nededog v. Colo. Dep't of Health Care Policy & Fin., 98 P.3d 960, 962 (Colo.App.2004).

II. Violation of the No-Fault Act
Insurer contends that the Commissioner erred in concluding, as a matter of law, that the collision coverage restriction violated the No-Fault Act. We disagree.
Our primary task in construing a statute is to interpret the statutory provisions in accord with the General Assembly's purpose and intent in enacting them. In re 2003-2004 Term of State Grand Jury, 148 P.3d 440, 444 (Colo.App.2006). To discern that intent, we rely on the language of the statute and give the words used their plain and ordinary meaning. Section 2-4-101, C.R.S.2006; In re 2003-2004 Term of State Grand Jury, supra.
The No-Fault Act must be viewed in the light of the obvious statutory scheme. It is fundamental that all of the No-Fault Act must be read and construed in context. Travelers Indem. Co. v. Barnes, 191 Colo. 278, 283, 552 P.2d 300, 303 (1976). The purpose of the No-Fault Act is, in pertinent part, to avoid inadequate compensation to victims of automobile accidents. Wiglesworth v. Farmers Ins. Exch., 917 P.2d 288, 291 (Colo.1996).
Insurance policy provisions that attempt to dilute, restrict, or condition coverage required by the No-Fault Act are void and invalid. Winscom v. Garza, 843 P.2d 126, 128 (Colo.App.1992). Exclusions under a contract of insurance must be consistent with the requirements of the No-Fault Act, or they are void as against public policy. Finizio v. Am. Hardware Mut. Ins. Co., 967 P.2d 188, 190 (Colo.App.1998). Further, if an insurance contract fails to comply with a statute, that statute will be read into the contract. Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 101 (Colo.1995).
However, insurers may exclude risks or limit coverage so long as public policy is not violated. Winscom v. Garza, supra. Exclusionary clauses that insulate certain conduct from coverage must be written in clear and specific language, see Am. Family Mut. Ins. Co. v. Johnson, 816 P.2d 952, 953 (Colo.1991), and are to be interpreted against defeat of the coverage. Bohrer v. Church Mut. Ins. Co., 965 P.2d 1258, 1262 (Colo.1998).

A. Definition of "Insured"
Insurer contends that the Commissioner erred by concluding that the definition of "insured" in § 10-4-703(6) applies to § 10-4-710(3) because that latter provision focuses on the vehicle rather than the insured. We are not persuaded.
There is no dispute here that insurer's policy defined "insured" consistently with § 10-4-703(6) of the No-Fault Act, which states: " "Insured" means the named insured, relatives of the named insured who reside in the same household as the named insured, or any person using the described motor vehicle with the permission of the named insured." (Emphasis added.)
Section 10-4-703 provides that the definitions therein apply to all of part 7 "unless the context otherwise requires." See Travelers Indem. Co. v. Barnes, supra, 191 Colo. at 283, 552 P.2d at 303 (the whole of the No-Fault Act must be read and construed in context).
We are not persuaded by insurer's argument that the context of § 10-4-710(3) permits a different definition of "insured" because the focus of § 10-4-710(3) is on the vehicle rather than the insured.
The focus is not entirely on the vehicle any more than the focus of the liability coverage is entirely on the injured person to whom the insured may be liable. Both coverages also focus on protecting the insured's economic interests. Under the liability coverage, the policy pays for damages the insured would be liable for, and under the collision coverage the policy pays for the insured's loss when the vehicle is damaged.
The requirement that collision coverage be offered to the insured is found in the No-Fault Act, § 10-4-710(3). The definitions in § 10-4-703, including the definition of "insured," apply to all provisions of the No-Fault *1261 Act "unless the context otherwise requires."
We recognize that collision coverage, applying as it does to damage to the covered car, differs from other required coverages or mandatory-offer coverages, which are triggered by the "insured's" operation or use of the covered vehicle. However, because all the coverages protect the insured's economic interests, we see nothing in the context of § 10-4-710(3) that "requires" the use of some other definition. The fact that § 10-4-710(3) provides no other definition of "insured" supports this conclusion.
One purpose of the No-Fault Act is to "avoid inadequate compensation to victims of automobile accidents." Colo. Sess. Laws 1973, ch. 94, § 13-25-2 at 334 (later codified at § 10-4-702). Here, the named insured, who suffered $9,179.36 in damage to his vehicle, is also a victim of an automobile accident. Thus, applying the broad definition of "insured" in § 10-4-703(6) to the collision coverage furthers the purposes of the No-Fault Act.
Therefore, we conclude that the definition of "insured" in § 10-4-703(6) applies to the mandatory offer of collision coverage in § 10-4-710(3). Section 10-4-710(3) must be read to include collision coverage for all "insured" drivers, including, as here, those using the vehicle with the named insured's permission.

B. Public Policy
Insurer next contends that, because the No-Fault Act does not expressly restrict exclusions from collision coverage and because collision coverage is optional under the Act, the exclusion from collision coverage in the insurance contract is permitted. We disagree, and conclude that the exclusion from collision coverage is void as against public policy.
Pursuant to the No-Fault Act, collision coverage is not mandatory; however, it is mandatory for an insurer to offer this type of coverage to every potential insured. Section 10-4-710(3) of the No-Fault Act states, "All insurers shall offer collision coverage for damage to insured motor vehicles...."
Here, although insurer properly offered collision coverage to the named insured, the coverage it offered contained an exclusion not provided for in the No-Fault Act.
Although no Colorado appellate court has addressed this specific issue relating to collision coverage, our courts have considered the effect of restricting coverage under other optional, mandatory-offer coverages, specifically uninsured/underinsured motorist (UM/UIM) coverage.
In Aetna Cas. & Sur. Co. v. McMichael, supra, the supreme court was asked to determine the class of persons to whom optional UM/UIM coverage must extend. In analyzing the plain language and legislative history of the UM/UIM statute, and in considering the public policy underlying the enactment of the UM/UIM statute, the court concluded, "[The No-Fault Act] require[s] insurers to offer UM/UIM coverage to a class of individuals coextensive with the class covered by the liability provision of the respective [insurance] policy. To hold otherwise would fail to implement the General Assembly's intent to make UM/UIM coverage widely available." Aetna Cas. & Sur. Co. v. McMichael, supra, 906 P.2d at 98.
Other divisions of this court have likewise required that optional coverage must be offered to a class of persons as broad as the class covered under the liability provisions of an automobile insurance policy. See, e.g., Richardson v. Farmers Ins. Exch., 101 P.3d 1138, 1141 (Colo.App.2004)(requiring insurance company to offer UM/UIM coverage to class of insureds coextensive with class covered under the liability provision of the policy and equal to the policyholder's bodily injury liability limits); Bernal v. Lumbermens Mut. Cas. Co., 97 P.3d 197 (Colo.App.2003) (holding that although UM/UIM coverage must be offered to a class of persons coextensive to the liability provisions, a policyholdernot an insurerhas the option to counteroffer for narrower coverage).
UM/UIM and collision coverages both serve to protect the economic interests of the insured. The collision coverage pays for the insured's loss when the insured's vehicle is damaged, and UM/UIM coverage provides a *1262 fund to pay the insured when an uninsured or underinsured driver causes the insured injury. Therefore, we perceive no reason to view collision coverage in a different way.
We are persuaded by these UM/UIM cases and, accordingly, apply the same reasoning to the language of § 10-4-710(3). Because this statute provides that the insurer "shall offer collision coverage" (emphasis added), it is an optional, mandatory-offer coverage, and we agree with the commissioner that it should be treated in the same manner as other optional, mandatory-offer coverages. See Aetna Cas. & Sur. Co. v. McMichael, supra; Richardson v. Farmers Ins. Exch., supra; Bernal v. Lumbermens Mut. Cas. Co., supra. Therefore, we conclude that when an insurer offers collision coverage, the policy must cover "insured[s]" as defined in § 10-4-703(6) of the No-Fault Act. See Wiglesworth v. Farmers Ins. Exch., supra; see also Bernal v. Lumbermens Mut. Cas. Co., supra, 97 P.3d at 201 (extending an optional offer to a broad class of individuals will protect consumers unaware of or unschooled in the language of insurance contracts).
We are not persuaded otherwise by Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893 (10th Cir.2006), cited by insurer. There, while considering whether the term "damage" in § 10-4-710(3) required the insurance company to pay damages for the diminished value of a covered vehicle, the court stated, "Thus, it is reasonable to conclude that the Colorado Legislature did not intend to limit an insurer's ability to provide for exclusions from optional collision coverage." Lovell v. State Farm Mut. Auto. Ins. Co., supra, 466 F.3d at 900. We find that case distinguishable for the following four reasons.
First, the federal court addressed a term that is not defined in the statute, and here we address the applicability of a defined term. Second, the federal court did not have the benefit of the Division's interpretation of the statute in question. Third, the question of to whom coverage is extended is more fundamental to the purposes of the No-Fault Act than the question of the amount of coverage provided. See § 10-4-702. Finally, we find the Colorado Supreme Court's treatment of other optional, mandatory-offer coverages in the No-Fault Act to be a strong expression of the public policy that should be applied to the issue before us.
Here, insurer placed exclusions from collision coverage in the insurance contract that violated the No-Fault Act, and therefore, those exclusions are void as against public policy.

IV. Remaining Arguments
Given our disposition that the collision restriction is void as against public policy, we need not address insurer's remaining arguments that (1) only § 10-4-712 addresses the types of conditions and exclusions that may be included in an automobile insurance policy; and (2) § 10-4-712 applies only to statutorily mandated coverage.
The Commissioner's final agency order is affirmed.
Judge ROY and Judge BERNARD concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2007.